**William E. MANN, Plaintiff,**

v.

**William D. LEEKE, Director, et al., Defendants.**

Civ. A. No. 74–1756.

United States District Court,
D. South Carolina,
Columbia Division.

Nov. 6, 1974.

William E. Mann, pro se.

Daniel R. McLeod, Atty. Gen. for the State of South Carolina, Columbia, S. C., and Emmet H. Clair, Asst. Atty. Gen., Columbia, S. C., for respondents.

HEMPHILL, District Judge.

By the complaint consisting of 12 handwritten pages, William E. Mann, admitted murderer under his own plea, and presently a resident of the Central Correctional Institute (State Prison) of South Carolina, where he is serving a life sentence imposed by the state court in Sumter County, South Carolina, for the slaying-shooting of his father while the victim was sitting defenseless on the commode, brings this action, pro se, asking an assortment of relief, including damages.

Endeavoring to catalog the various defendants as his persecutors, in their various capacities as servants of South Carolina in the prison system, he accuses a range which tops with the director of the corrections department and bottoms with the Chaplain's female secretary, against whom he has lodged the most uncomplimentary charges. He contends that he has been deprived of his constitutional rights by change of his custody status from "A" to a lower grade, by racial discrimination against him as a white man housed in a predominantly black ward, by lack of rehabilitation efforts by the state penal officials, and by the infliction of cruel and unusual punishment in permitting female personnel to work in the environment of

the male prisoners where they stimulate the sexual drive of plaintiff and other male inmates to their frustration. Initially, he says he want to "stop the persecution and give what is due plaintiff as according to my dignity and Rules and Regulations, terminate the overflow of Blacks dominated to each ward, terminate women from working around inmates * * * stop discriminating against whites Rehabilitation." His complaint is readable if disorganized, but departs from its ordinary theme to wade into such opinions as "culture difference between blacks and whites". He asked to proceed in forma pauperis, despite the frivolous nature of his complaint, and the court allows the petition to be filed in forma pauperis, but directs that the Marshal not be required to serve the papers on any of the defendants, free of charge, because the Marshal's office, already overworked, can ill-afford to spend its time serving papers in cases which have no merit, and this court finds no merit in his claims.

▆▆▆ Dealing with the right of a person to proceed in forma pauperis, Congress early recognized the blanket authority to proceed in forma pauperis would cause a flood of cases in the United States District Courts, and time has proved the integrity of that judgment. In an effort to put the brakes on complaints that are frivolous or malicious, in the appropriate statute, 28 U.S.C. § 1915, Congress inserted subsection (d) which reads:

(d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, *or if satisfied that the action is frivolous or malicious.* (Emphasis added.)

The statute authorizing the institution of a civil action by an indigent litigant by leave of this court, also empowers the court to monitor the action to the end of avoiding or minimizing abusive prosecutions of civil actions in forma pauperis by indigent defendants who seek to exploit or to abuse the generous purposes of the statute.[1] The power to invoke this shield before a civil action is instituted has been recognized by the United States Fourth Circuit Court of Appeals, and other circuit and district courts[2] or after a request for dismissal has been made.[3] Various courts have interpreted Congress as having envisioned that this power of the court to excise frivolous or malicious actions is to be exercised on a case-by-case basis, dependent upon the particular facts of each case.[4] An excellent treatment of the problem facing district judges because of the plethora of actions by prisoners, against any target in sight, is given by Chief Judge Sidney O. Smith, Jr., in *Jones v. Bales*, 58 F.R.D. 453, 463–64 (N.D.Ga.1972), discussing 28 U.S.C. § 1915(d) in the context of a suit filed by an indigent convict under provisions of 42 U.S.C. § 1985.[5] He reads § 1915(d) "as a

1. A review of the record shows that in 1972 this man has previously filed petitions for habeas corpus. He has a habeas corpus pending now before the United States District Court (Civil Action No. 74–669) and he has previously brought suit against the lawyers who were appointed to defend him (Civil Action No. 72–81). The South Carolina complaint was dismissed by the district judge and affirmed by the United States Fourth Circuit Court of Appeals.

2. *Caviness v. Somers*, 235 F.2d 455 (4th Cir. 1956); *Farley v. Skeen*, 113 F.Supp. 736, 737 (N.D.W.Va.1953), appeal dismissed, 208 F.2d 791 (4th Cir. 1953); *Spears v. United States*, 266 F.Supp. 22, 27 (S.D.W.Va.1967), citing *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 35 S.Ct. 236, 59 L.Ed. 457 (1915); *Fletcher v. Young*, 222 F.2d 222 (4th Cir. 1955); *Conway*

*v. Fugge*, 439 F.2d 1397 (9th Cir. 1971); *Brown v. Schneckloth*, 421 F.2d 1403 (9th Cir. 1970).

3. *Fletcher v. Young* supra; *Conway v. Fugge*, supra; *Allison v. Wilson*, 434 F.2d 646, 648 (9th Cir. 1970).

4. *Willard v. United States*, 299 F.Supp. 1175, 1177 (N.D.Miss.1969) aff'd, 422 F.2d 810 (5th Cir. 1970), cert. denied, 398 U.S. 913, 90 S.Ct. 1714, 26 L.Ed.2d 76 (1970); *Jones v. Bales*, 58 F.R.D. 453 (N.D.Ga.1972), aff'd, 480 F.2d 805 (5th Cir. 1973).

5. 42 U.S.C. § 1985(3) provides: *Conspiracy to interfere with civil rights—Preventing officer from performing duties.—Depriving persons of rights or privileges* (3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of

very broad ground of discretion to the courts regarding management of in forma pauperis actions" and as "a grant of power to dismiss in situations where dismissal under . . . Rule . . . 12 might be improper." (Citations omitted.) He very carefully explained why prisoners' cases are sometimes singularly exposed to a judicious application of § 1915(d). After observing the proclivities of some prisoners, who lack a basic respect for accuracy, who take liberties with the truth in submitting pleadings to the courts so as to avoid dismissal under Rule 12 or Rule 56, he continues:

> It is plain to this Court that courts need an extra measure of authority when faced with actions proceeding in forma pauperis—particularly where the action is brought by a prisoner seeking damages. And it is this court's conclusion that Congress has granted that extra authority by enacting 28 U.S.C. § 1915(d). In light of 1915(d)'s general purpose, the specific term 'frivolous' refers to an action in which the plaintiff's realistic chances of ultimate success are slight . . .
> This is not to say that such suits should not be allowed filed or be dismissed abruptly or that a court should readily assume frivolity because it is prisoner filed. To the contrary, it is incumbent upon the court to develop the case and to sift the claims and known facts thoroughly until completely satisfied either of its merit or lack of same. In the former instance, the case should proceed with the assistance of the court. However, upon reasonable effort where the contrary appears, it should be dismissed.

This court has carefully reviewed the complaint in this action and determined that the same is not only frivolous but that the plaintiff's realistic chances of ultimate success is less than slight.

In addition to the frivolous nature of the complaint, were this court to entertain suits of this nature, it will be constantly plagued, and deluged, by prisoners' complaints. To be sure, prisoners' rights have been envisioned, and even encouraged, by appellate decisions [6], but *some* appellate courts, and *some* appellate decisions have recognized the necessity for discipline in the prison systems of the country. As was stated by United States Circuit Judge Donald Russell in *Breeden v. Jackson,* 457 F.2d 578, 580 (4th Cir. 1972) (rehearing en banc denied):

> While modern authority has considerably broadened prisoner's rights, prison discipline remains still largely within the discretion of the prison authorities and federal courts will interfere only where paramount federal constitutional or statutory rights intervene. It may be that the prison authorities in this case could have arranged to provide the petitioner with less onerous conditions of confinement. Under the guise of protecting constitutional rights, however, federal courts do not have the power to, and must be careful not to, usurp the responsibility that rests with the executive branch for the management of prisons. It is only when the deprivations of prison confinement

---

another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of

such support or advocacy in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

**6.** And now, sadly, appellate courts, having created the monster of their liberalities, are unable to control the monster, and are constantly in the path of the deluge.

impose conditions of such onerous burdens as to be of constitutional dimensions that courts may intervene in prison management. So long as the rules of prison management are "not so unreasonable as to be characterized as vindictive, cruel or inhuman," so long as they "are necessary or reasonable concomitants of imprisonment", so long as the regulations do not involve punishment of restraints "intolerable in fundamental fairness," so long as the rules are not exercised "in such a manner to constitute clear arbitrariness or caprice", no constitutional rights are infringed.

This court has reviewed the complaint of the petitioner, and it is obvious that the matters of which he complains are those within the peculiar authority, necessarily so, of those in charge of the prison. While in this modern day of excusing, and almost saluting, every departure from morality, the criminal element cannot be classified as the mad-dogs of society, it is obvious that their activities detract from the general welfare of America, and cause irreversible grief to the victims and staggering costs to the taxpayers. Surely a murderer has his rights; but he does not have the right to run the prison, or harass the officials with frivolous suits.

Additionally, this court finds no federal question involved; nothing of constitutional dimension is alleged.

The action is dismissed and further proceedings in forma pauperis are denied.

AND IT IS SO ORDERED.