Melvin **GALE**, Appellant,

v.

**U. S. DEPARTMENT OF JUSTICE, FEDERAL BUREAU OF PRISONS et al.**

No. 79–2331.

United States Court of Appeals, District of Columbia Circuit.

June 12, 1980.

Melvin Gale, pro se, was on the motion to proceed in forma pauperis.

Charles F. C. Ruff, U. S. Atty., John A. Terry and Constance L. Belfiore, Asst. U. S. Attys., Washington, D.C., were on the response to the motion to proceed in forma pauperis.

Before ROBINSON, MacKINNON and MIKVA, Circuit Judges.

Opinion for the Court filed by MIKVA, Circuit Judge.

Dissenting opinion filed by MacKINNON, Circuit Judge.

MIKVA, Circuit Judge.

Appellant Melvin Gale is a federal prisoner currently incarcerated in the federal penitentiary in Lewisburg, Pennsylvania. In 1976, Gale was convicted in the District Court of possession of an unregistered firearm and other charges and received a sentence of 3 to 9 years. After sentencing, he was taken to the District of Columbia Reformatory in Lorton, Virginia. Additional charges of burglary and grand larceny were then pending against him in the District of Columbia Superior Court. Gale was transferred from Lorton to Superior Court on several occasions in connection with his trial on these charges. On February 28, 1977, Gale was convicted. He received a sentence of 12 to 40 years on the burglary charge and a concurrent sentence of 3 to 9 years on the larceny charge. Later, he was transferred to Lewisburg where he now resides.[1]

Gale commenced this *pro se* action in September, 1979, by mailing a complaint and a motion for leave to proceed without prepayment of costs to the District Court. His complaint alleges that he wrote to the Justice Department's Bureau of Prisons on February 5, 1979, requesting copies of the documents used to effect his transfers between Lorton and Superior Court. The complaint states that his request was unanswered and that he then forwarded an appeal to the office of the Deputy Attorney General on April 9. On April 18, the Director of the Justice Department's Office of Privacy and Information Appeals wrote to Gale, saying that he could not act on any appeal until there had been an initial decision by the Bureau of Prisons, but that if the Bureau had still not responded to the request, Gale was entitled to treat the letter as a denial of his appeal.[2] Gale alleged that as of August, 1979, he had not received the documents he had requested.

Gale asserted that he was entitled to receive the documents under the Freedom of Information Act, 5 U.S.C. § 552 (1976), and the Privacy Act, 5 U.S.C. § 552a (1976). He also alleged that the government's failure to deliver the documents deprived him of constitutional rights protected by the Fifth Amendment's due process clause and the Eighth Amendment. Gale seeks $150,000 in compensatory and punitive damages and attorney's fees for a fellow inmate who assisted him in drawing up the complaint.

On September 26, 1979, the District Court granted Gale permission to file the complaint without prepayment of costs, but simultaneously dismissed the action, citing 28 U.S.C. § 1915(d) (1976)[3] and another case brought by Gale earlier in the year that had also been dismissed. Gale then filed a notice of appeal in the District Court and a motion for leave to appeal without prepayment of costs. This motion was denied by the District Court on the ground that the appeal is "frivolous and not taken in good faith." *See* 28 U.S.C. § 1915(a) (1976).

1. Gale may serve the sentences imposed by both courts in a federal facility such as Lewisburg since persons convicted in the courts of the District of Columbia are committed to the custody of the Attorney General of the United States, who may designate a federal institution as the place of confinement. D.C.Code § 24–425 (1973).

2. Gale attached copies of the letters to his complaint.

3. 28 U.S.C. § 1915(d) allows the court to dismiss an *in forma pauperis* action if it is "satisfied that the action is frivolous or malicious."

Pursuant to Fed.R.App.P. 24(a), Gale filed a motion in this Court seeking leave to appeal without prepayment of costs on November 19. On December 11, the Chief Judge ordered the government to respond to this motion. Based upon our review of the record and the government's response, we now grant Gale's motion.

While portions of the complaint are clearly frivolous,[4] it does assert a cause of action under the Privacy Act, 5 U.S.C. § 552a(d)(1) (1976) (access by an individual to his record or to any information pertaining to him). Gale alleges that the Bureau of Prisons has refused to give him documents pertaining to him which are in the Bureau's possession. It is reasonable to expect that the Justice Department's files concerning a prisoner in federal custody[5] will include records of his transfers from prison to court, and nothing in the *complaint* indicates otherwise. The District Court's order contains no explanation other than the notation "See also Civil Action 79–84."[6]

The government's response to Gale's motion does not deny that the complaint states a claim for relief under the Privacy Act. Rather, it argues that this case is moot because the Regional Director of the Bureau of Prisons wrote to Gale in March, 1979, stating that the requested information was not contained in Gale's file. Since Gale's complaint seeks not merely a response to his request but the documents themselves, the case would only be moot if the government had given Gale the documents.

The government's assertion that it does not have these documents raises factual issues which cannot be resolved in this Court. The District Court did not consider this assertion, since it dismissed the action solely on the basis of the complaint. On remand, the government will be free to attempt to prove that it does not possess the documents requested by Gale.

Although Gale's request refers to the documents as those "used by the District of Columbia Court . . . to remove Melvin Gale from federal custody," we do not necessarily agree with his claim that his removal from Lorton to Superior Court constituted a removal from federal custody. We do find that Gale has adequately described the documents used to transfer him. It is clear that Gale was transferred on several occasions pursuant to "come-up" orders issued by the Clerk of the Superior Court at the request of the United States Attorney's office. *See Gale v. United States*, 391 A.2d 230, 232 (D.C.Ct.App.1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979). Gale's letter to the Bureau of Prisons specifies the dates of his transfers and states that they were made at the request of the "District of Columbia Court." Mindful of the Supreme Court's admonition that a *pro se* complaint should be held "to less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972), we believe that Gale's letter is understandable as a

---

4. We perceive no basis for concluding that either the Fifth or the Eighth Amendment grants Gale a right to the documents in question. Furthermore, his claim for damages is meritless since the statutes upon which he relies do not provide a monetary remedy. The Freedom of Information Act does not create a cause of action for damages, and the provision of the Privacy Act which allows an individual to recover damages does not apply to an agency's failure to furnish records that have been requested. *See* 5 U.S.C. § 552a(g)(4) (1976).

5. Although Gale was taken to Lorton after his conviction in the District Court, he remained in the custody of the Attorney General of the United States pursuant to 18 U.S.C. § 4082 (1976).

6. This refers to an action brought by Gale in the District Court in January, 1979, which alleged that the transfers between Virginia and the District of Columbia deprived him of various constitutional rights. Gale sought a declaration that the transfers were unauthorized, vacation of his sentences and dismissal of the indictment or a new trial, and compensatory damages for each day of his confinement after the first transfer. This action was dismissed by the District Court as frivolous, and Gale did not appeal. The District Court may have interpreted Gale's complaint in the present case as making similar claims. Since Gale is seeking documents, however, his complaint states a claim that was not made in Civil Action 79–84.

request for the documents involved in his transfers, even if he may be mistaken in his legal conclusion that these transfers removed him from federal custody.

We are aware that Gale undoubtedly seeks these documents to assist him in making additional claims that his transfers were unauthorized. His likelihood of success on those claims is not at issue here. Gale's reasons for seeking these documents are irrelevant to the question of whether the Privacy Act gives him a right to obtain them. *Cf. NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 143 n.10, 95 S.Ct. 1504, 1513 n.10, 44 L.Ed.2d 29 (1975).

## CONCLUSION

We disagree with the District Court's view that Gale's appeal is frivolous. We therefore grant his motion to proceed without prepayment of costs. The District Court's order dismissing the complaint is vacated and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

MacKINNON, Circuit Judge (dissenting):

This case is completely frivolous in *so many ways* that I am forced to dissent and to spell out the fundamental legal considerations which support that conclusion. It is misguided sympathy for appellant to send him further along the frivolous road. It also indicates why our court docket is jammed and decisions in meritorious cases of great magnitude are delayed.

Gale is a prisoner at Lewisburg Penitentiary where he is serving sentences imposed by the District and Superior Courts in the District of Columbia. Relying on the Freedom of Information and Privacy Acts he "requested documents" of the Department of Justice (hereafter "Department") which

he alleged would show his "transfer from Federal custody" following his sentencing in the United States District Court for the District of Columbia (hereafter "District Court"). At that time he was transported from the District of Columbia Jail to Lorton Reformatory in Virginia (hereafter "Lorton") and thereafter on several occasions to the Superior Court of the District of Columbia (hereafter "Superior Court") for trial on local burglary and grand larceny charges. The Department searched its files for such records but was unable to find them and so advised Gale. He then filed suit to compel the production of such documents and claimed $150,000 damages and attorneys fees. The District Court allowed his suit to be filed *in forma pauperis* and thereafter dismissed it under 28 U.S.C. 1915(d) as frivolous. The judgment of the District Court should be affirmed for the simple reason that the Department does not have the requested records and for the additional reason that Gale was *never* in actual federal custody. He was at all times here material in the physical custody of the District of Columbia Board of Corrections, that operates both the Jail and Lorton, and Gale's factual allegations indicate that he was never outside such custody. His custody position never changed when he was taken daily to Superior Court for trial on his burglary and grand larceny charges. Gale's claim is thus frivolous because the Department does not possess the requested transfer documents, and if they could be found they would not show any "transfer from federal custody." There are also several other reasons why the case is frivolous.

### I

Gale is serving a sentence of 3 to 9 years pursuant to a conviction on four firearms counts [1] adjudged on November 19, 1976 by the United States District Court for the

---

**1.** Possession of unregistered firearm, 26 U.S.C. § 5861(d); unlawful transfer of firearm, 26 U.S.C. § 5861(e); possession of prohibited weapon, D.C.Code § 22–3214(a); and carrying a pistol without a license, D.C.Code § 22–3204. At sentencing the Government's allocution stated that he had made 20 entries to the "Sting" warehouse and had sold goods 17

times for which he received $4,375. The goods included valuable stereo equipment, TV sets and a U.S. Treasury check for $1,665.23. Some of the equipment was new—in original cartons.

The Government also asserted that a material government witness in a criminal case in the Superior Court of the District of Columbia (No. 31855–76) had been severely beaten by Gale,

District of Columbia. The conviction was for two Federal and two District of Columbia (hereafter D.C.) offenses. The District Court is both a constitutional and a legislative court and has jurisdiction over both Federal and D.C. offenses.[2] Identical sentences of 3 to 9 years on each count were imposed to run "concurrently" with each other but "consecutively to any sentence imposed *prior to . . . [November, 1976] . . .* by any court in this or any other jurisdiction, state or federal." (Emphasis added)

On February 28, 1979, Gale was sentenced by the Superior Court to imprisonment for 12–40 years for burglary and concurrently to 3–9 years for grand larceny. *Gale v. U. S.*, 391 A.2d 230, 231 (D.C.C.A. 1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1057, 59 L.Ed.2d 96 (1979). The record does not reflect whether this offense is consecutive to the District Court sentence. The offenses for which Gale was sentenced in District Court and Superior Court are both offenses against the United States, are so charged and both sentences of imprisonment commit the defendant to the custody of the Attorney General.[3] The Attorney General then may designate the place of confinement in a State, District of Colum-

and that because of said beating he refused to testify and it was necessary to dismiss the case. In a subsequent Superior Court case (No. 47485–76) the Government asserted that Gale had obtained property as a result of 44 burglaries committed during 1974, 1975 and January, 1976 and that following his indictment he had attempted to obstruct several material witnesses.

**2.** *O'Donoghue v. U. S.*, 289 U.S. 516, 545–46, 53 S.Ct. 740, 748, 77 L.Ed. 1356 (1933). The judicial power of the District of Columbia is vested, *inter alia*, in both the United States District Court for the District of Columbia and the Superior Court of the District of Columbia. D.C.Code § 11–101 provides:

The judicial power in the District of Columbia is vested in the following courts:

(1) The following Federal Courts established pursuant to article III of the Constitution:

(A) The Supreme Court of the United States.

(B) The United States Court of Appeals for the District of Columbia Circuit.

(C) The United States District Court for the District of Columbia.

(2) The following District of Columbia courts established pursuant to article I of the Constitution:

(A) The District of Columbia Court of Appeals.

(B) The Superior Court of the District of Columbia.

(July 29, 1970, Pub.L. 91–358, § 111, title I, 84 Stat. 475.)

Pursuant to this authority Congress has prescribed that the United States District Court has jurisdiction of criminal offenses against the statutes of the District of Columbia when such offense is joined in an information or indictment with any Federal offense. D.C.Code § 11–502 provides:

In addition to its jurisdiction as a United States district court and any other jurisdiction conferred on it by law, the United States District Court for the District of Columbia has jurisdiction of the following:

(3) Any offense under any law applicable exclusively to the District of Columbia which offense is joined in the same information or indictment with any Federal offense.

**3.** 18 U.S.C. § 4082(a) provides:

(a) A person convicted of an offense against the United States shall be committed, for such term of imprisonment as the court may direct, to the custody of the Attorney General of the United States, who shall designate the place of confinement where the sentence shall be served.

D.C.Code § 24–425 provides:

All prisoners convicted in the District of Columbia for any offense, including violations of municipal regulations and ordinances and Acts of Congress in the nature of municipal regulations and ordinances, shall be committed, for their terms of imprisonment, and to such types of institutions as the court may direct, to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinements where the sentences of all such persons shall be served. The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the District of Columbia Government, the federal government, or otherwise, or whether within or without the District of Columbia. The Attorney General is also authorized to order the transfer of any such person from one institution to another if, in his judgment, it shall be for the well-being of the prisoner or relieve overcrowding or unhealthful conditions in the institution where such prisoner is confined, or for other reasons.

bia, or a Federal facility.[4] The Jail and Lorton Reformatory are facilities of the government of the District of Columbia and both are under the direction and supervision of the District of Columbia, Department of Corrections.[5]

## II

The material facts and procedural posture of Gale's case are as follows: On or about the last week of November 1976, following his sentencing in District Court on the U.S. and D.C.Code offenses, Gale was transferred from the District of Columbia jail, located in the District of Columbia to the Lorton Reformatory in nearby Virginia where he began serving his District Court sentence of 3 to 9 years in the custody of the Attorney General. While he was so confined at Lorton he was on several days transported to D.C. Superior Court for trial on his burglary and grand larceny charges. He was convicted in Superior Court and sentenced on February 28, 1977. At present he is serving his sentences imposed by both the Federal and D.C. Courts in the Federal Penitentiary at Lewisburg, Pennsylvania.

**4.** *Id.*, 18 U.S.C. § 4082(b) provides:
(b) The Attorney General may designate as a place of confinement any available, suitable, and appropriate institution or facility, whether maintained by the Federal Government or otherwise, and whether within or without the judicial district in which the person was convicted, and may at any time transfer a person from one place of confinement to another.

**5.** D.C.Code § 24–442 provides:
§ 24–442. Powers of Department over institutions—Rules and regulations.
Said Department of Corrections under the general direction and supervision of the Commissioner of the District of Columbia shall have charge of the management and regulation of the Workhouse at Occoquan in the State of Virginia, the Reformatory at Lorton in the State of Virginia, and the Washington Asylum and Jail, and be responsible for the · safekeeping, care, protection, instruction, and discipline of all persons committed to such institutions. The District of Columbia Council shall have power to promulgate rules and regulations for the government of such institutions and the Department of Corrections with the approval of the Commissioner shall have power to establish and conduct industries, farms, and other activities, to clas-

This case involves Gale's complaint filed under the Freedom of Information [6] and Privacy Acts.[7] Count 1 of that complaint demands records that he alleges were used "to remove Melvin Gale from Federal Custody", i. e., to be tried in the Superior Court. Count 2 requests "Letters and/or documents sent to Federal Bureau of Prisons by U.S. Attorney Office 'requesting' Melvin Gale *be removed from Federal Custody.*" Count 3 requests a "Copy of the District of Columbia Marshals 'Order' *to remove Melvin Gale from United States Commitment* 76–513. United States District Court (D.C.Cir.) Judge George L. Hart." (Emphasis added) Attached to the complaint is an undated letter to the Department of Justice, which he alleges constituted his request for documents.[8] The letter is set forth in full in the Appendix. It contains a number of requests, all for documents allegedly "used . . . *to remove Melvin Gale from Federal Custody*" on the dates mentioned in paragraph # 1, i. e., following his sentence in Superior Court. (Emphasis added) The requests are summarized in the margin.[9]

sify the inmates, and to provide for their proper treatment, care, rehabilitation, and reformation.

**6.** 5 U.S.C. 552.

**7.** 5 U.S.C. 552a(a), (d).

**8.** The complaint alleges that the written request was made on February 5, 1979. See Count 1.

**9.** His letter requests: 1. Prisoner request forms . . . to remove Melvin Gale from Federal Custody on 12 specified dates in 1976 and 1977. Nine of these dates occurred after he was sentenced in Federal Court on November 19, 1976 on his four federal and District of Columbia offenses. 2. Letters to Federal Bureau of Prisons from U.S. Attorney's Office "requesting" Gale "be remanded from Federal Custody." 3. The District of Columbia Marshal's Order to remove Gale from United States Commitment [in case] 76–513. 4. "Return sheets" on each of the dates. 5. All "warrants" "used by the District of Columbia Court pursuant to [D.C. Code] § 11:101 . . . . to remove . . . Gale from Federal Custody on the dates mentioned . . . ." 6. All Writs of [Habeas Cor-

His description of the documents, as outlined in n.9, is all important. First, because if they are non-existent his request is obviously frivolous. Second, when the correct character of the documents he misdescribes is recognized the likelihood is enhanced that they are no longer in existence (as the Department stated). Third, his description may indicate that his demand is based on a frivolous theory of the existence of documents.

From the itemization in n.9 of *all* the documents requested by Gale it appears that every one of them is described as or refers to a document *removing Gale from Federal Custody* after he was transferred to Lorton following his sentence imposed on November 19, 1976 by the District Court.

The record herein contains a copy of the letter of March 19, 1979 that Gale received from the Bureau of Prisons in answer to his request. This letter states, *inter alia*: "A review of your file indicates that the records from Lorton and the D.C. Jail are *not* contained [in your inmate central file]." (Emphasis added) The letter is set forth in the margin.[10] To this Gale insists that the Department of Justice must have the documents because he thinks it ought to have them. His claim was denied by the District Court as frivolous and the case was dismissed. On appeal we are directed to determine the matter *de novo*. *Cruz v. Hauck*, 404 U.S. 59, 63, 92 S.Ct. 313, 315, 30 L.Ed.2d 217 (1971) (Douglas, J., concurring). "Our previous decisions establish that a certification of this type must control 'in the

absence of some showing that the certificate was made without warrant, or was itself not made in good faith'," *Maloney v. E. I. DuPont de Nemours & Co.*, 396 F.2d 939, 940 (D.C.Cir.1967), *cert. denied*, 396 U.S. 1030, 90 S.Ct. 585, 24 L.Ed.2d 525 (1970) *citing, Waterman v. McMillan*, 135 F.2d 807, 808 (1943), (D.C.Cir.1944), *cert. denied*, 322 U.S. 749, 64 S.Ct. 1160, 88 L.Ed. 1580 (1944); accord, *Spruill v. Temple Baptist Church*, 141 F.2d 137, (D.C.Cir.1944), *cert. denied*, 323 U.S. 755, 65 S.Ct. 87, 89 L.Ed. 604 (1944). Certification by the presiding judge carries great weight but is not necessarily conclusive. *Johnson v. U. S.*, 352 U.S. 565, 77 S.Ct. 550, 1 L.Ed.2d 593 (1957). On this appeal Gale's position is fully set forth in his eight page brief prepared with inmate assistance and his "Traverse to the Response of Appellees." The appointment of counsel was not requested.

### III

The Court may dismiss . . . [proceedings *in forma pauperis*] . . . if satisfied that the action is frivolous . . ." 28 U.S.C. § 1915(d). A case is to be considered frivolous if it is without arguable merit, *Taylor v. Gibson*, 529 F.2d 709 (5th Cir. 1976); *Scellato v. Department of Corrections*, 438 F.Supp. 1206 (W.D.Va.1977); where the plaintiff's realistic chances of success are slight, *Clark v. Zimmerman*, 394 F.Supp. 1166 (M.D.Pa.1975); *Boston v. Stanton*, 450 F.Supp. 1049 (W.D.Mo.1978);

---

pus] ad prosequendum used by Superior Court "to remove . . . Gale from Federal Custody . . . etc." 7. "All . . . Federal Bureau of Prison documents 'authorizing the removal of . . . Gale from Federal Custody . . . [under Case No.] 76–513 . . .'" etc.

**10.** March 19, 1979

Gerald M. Farkas, Regional Director
Northeast Region
Your Request for Records

Melvin Gale, Reg. No. 40723–133
USP, Lewisburg

This is in response to your request for records from your inmate central file.

Your file has been completely reviewed and this office is unable to locate any of the information you have requested.

It can only be suggested that you contact the appropriate sentencing court and advise them of your needs. In the alternative you may wish to contact the appropriate U.S. Marshal's Office and/or the D.C. Jail and Lorton Reformatory.

*The Bureau of Prisons normally maintains only those records generated while the prisoner is confined in a federal facility.* A review of your file indicates that the records from Lorton and the D.C. Jail are not contained therein. (Emphasis added). Lorton, the D.C. Jail and D.C. Superior Court are exempt from the FOIA and the Privacy Act.

*Mann v. Leeke,* 73 F.R.D. 264 (D.C.S.C.1974) *aff'd without op.,* 551 F.2d 307 (4th Cir. 1977); or where the claim has no reasonable probability of succeeding on the merits. *Daves v. Scranton,* 66 F.R.D. 5 (E.D.Pa. 1975).

A finding that a case is frivolous involves a legal determination of the substantiality of the claim or whether it lacks a justiciable realistic basis. *Serna v. O'Donnell,* 70 F.R.D. 618 (W.D.Mo.1976). The decision to dismiss a complaint for frivolity calls for an exercise of sound discretion by the Court, which may consult its own records in making the determination. *Van Meter v. Morgan,* 518 F.2d 366 (8th Cir. 1975) *cert. denied* 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975); *Daye v. Bounds,* 509 F.2d 66 (4th Cir. 1975) *cert. denied* 421 U.S. 1002, 95 S.Ct. 2404, 44 L.Ed.2d 671 (1975). Where an *in forma pauperis* case reaches the Court of Appeals, as we said in *Young v. United States,* 267 F.2d 692, 693 (D.C.Cir.1959):

> Frivolousness is a ground for dismissing an appeal in forma pauperis under 28 U.S.C. § 1915 (1952), and also a prepaid appeal under Rule 39, Fed.R.Crim.P., 18 U.S.C.A. *United States v. Johnson,* 1946, 327 U.S. 106, 111, 113, 66 S.Ct. 464 [466, 467], 90 L.Ed. 562; *United States v. Peltz,* 2 Cir., 1957, 246 F.2d 537; *Sykes v. United States,* 4 Cir., 1955, 224 F.2d 313.

There are several conclusive determinations that indicate that Gale's claims are frivolous. First, the Department has stated it does not have such records and there is nothing to indicate that this is incorrect. In fact, as we explain later, it would be highly unlikely that the Department of Justice would have any such documents at this date. It is also significant that the Privacy Act does not require the keeping of "come up" requests. Section 552a(e) of the Privacy Act provides:

> "Each agency that maintains a system of records shall—(1) maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by Executive Order of the President . . . (5) maintain all records which are used by the agency in making any determination about an individual with such accuracy, relevancy, timeliness and completeness as is reasonably necessary to assure fairness to the individual in the determination."

"Come up" requests are not used by the agency in "making any *determination* about [the] individual" so transferred, and it is not relevant or necessary for the accomplishment of any purpose required of the Department by statute or Executive Order of the President for it to keep all "come up" orders on prisoners at the Jail and Lorton. 5 U.S.C. § 522a(e). Second, there are no documents, "removing . . . Gale *from Federal Custody*" because Gale continued at all times during the relevant period to be in the actual physical custody of the D.C. Department of Corrections. As shown above, both the jail and the reformatory are District of Columbia institutions and under D.C. control and supervision. Prisoners who are sentenced to serve federal sentences in the custody of the Attorney General may serve them at Lorton and while they are in the *legal* custody of the Attorney General and the *physical* custody of the District of Columbia authorities—moreover, half of Gale's concurrent District Court sentences were for D.C. offenses—not U.S. Code offenses. Thus when Gale was taken from Lorton, Virginia to Superior Court in the District of Columbia for trial there was no change in his D.C. custody status.

This explains why it is unreasonable to expect that the Justice Department's file on Gale would include records of his transfer from a D.C. prison to a D.C. court. Since, at all times here material, he was always in actual physical custody of the District of Columbia Board of Corrections he never came under *actual* Federal custody.

Thus, Gale's insistent unsupported contention that some documents exist that may show him to be transferred *from federal custody* is completely unfounded. The facts

alleged in Gale's complaint clearly indicate that documents removing him from federal custody do not exist and support the likelihood that, as the Department stated, the daily "come up" lists are no longer available because they were relatively unimportant.

## IV

There are several other points which have not been raised by the Justice Department but which are relevant on the issue of frivolity. The records sought are "come up" lists of the *District of Columbia* and the Freedom of Information Act and the Privacy Act do *not* apply to the District of Columbia.[11] The lists are also court records and neither Act applies to the courts of the United States or the District of Columbia.[12]

A "come up" order is a routine daily notice from the Clerk of the Superior Court to the United States Marshal, who acts as agent for the District of Columbia,[13] indicating the prisoners who are to be made available in District of Columbia Courts from the Jail and Lorton. "It involves only the intra-jurisdictional transfer of prisoners . . . ." *Gale v. United States*, 391 A.2d 230 (D.C.C.A.1978). On such court appearance the prisoner never leaves the physical custody of the District of Columbia Department of Corrections that operates the Lorton Reformatory in nearby Virginia pursuant to D.C.Code § 24–442.[14]

It is also significant that Gale's original theory was that he somehow came under the Interstate Agreement on Detainers (IAD). However, the District Court denied that claim, *Gale v. Attorney General Griffin Bell, et al.*, D.C.D.C. Civil Action 79–84, January 9, 1979. So did the D.C. Court of Appeals. *Gale v. U. S.*, 391 A.2d 230. No detainer was ever filed against Gale. The IAD is triggered only by the filing of a detainer, *United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), and Gale's "come up" order was not a detainer. *Gale v. United States*, 391 A.2d 230 (D.C.C.A.1978). His present claim has strong overtones which indicate he is persisting that he has practically the same right to set aside his conviction as if the IAD were applicable and violated. Two courts have denied that claim. However, now, without expressly relying on the IAD, he asserts the "requested documents" are necessary for him to accomplish essentially the same result. This is not a reason to deny specific requested documents if they were in possession of the Department, but as explained below, it does indicate that Gale's basic claim will not be prejudiced by the inability of the Department to produce the requested records.

The records sought would also be several years old, are of a routine character and not of any general continuing utility. So they may have been routinely destroyed as such records normally are. The large number of prisoners that are transported every day to both courts also indicates that "come up" lists, comprising all such prisoners, would not be placed in the file of an individual prisoner. So it is unreasonable to expect that Gale's file would include a copy of a routine daily list designating a large number of prisoners that were merely to appear in court on a particular day.

---

11. The Freedom of Information Act provides: "For the purpose of this subchapter (1) agency . . . does not include (B) the courts of the United States; . . . (D) the government of the District of Columbia." 5 U.S.C. § 551. The Freedom of Information and Privacy Acts only apply to Executive agencies of the United States. 5 U.S.C. §§ 551, 552(e), 552a(a)(1).

12. *Id.*

13. The United States Marshal in the District of Columbia acts as the agent of the District of Columbia Courts pursuant to D.C.Code § 13–302 which provides:

> Subject to the provisions of law or rules of court for service by other persons, the United States marshal for the District of Columbia or his deputy shall serve the process of the District of Columbia Court of Appeals and the Superior Court of the District of Columbia.

14. See n.5, supra.

## V

Finally, Gale is not harmed in any way by the absence of the documents indicating his transportation to D.C. Superior Court on the specified dates. He does not need any documents to support the obvious theory of his claim. His transfers can be proven by his own testimony and that is sufficient to raise the issues he seeks to raise. His "removal" from Federal custody, if such it be, would flow from the *fact* of removal rather than from any formal document so stating.

Gale can now proceed with his cause of action for release. In that litigation, the Government cannot deny his *factual* allegations that on dates specified he was transferred from Lorton Reformatory where he was serving his sentence adjudged in District Court on his Federal and D.C. convictions, to the Superior Court for trial on his D.C.Code offenses. Since the documents he requested have been lost, destroyed or cannot be located by the Government, his allegations of the *facts* of his transfers would stand uncontradicted, although they never existed in the form he describes them.

Gale will be entitled to the admission of such facts by the Government in any suit he may bring. Secondary or oral testimony is admissible to prove the contents of the original when the primary evidence is unavailable, destroyed, or cannot be located after reasonable and diligent search. *London v. Standard Oil Company of California, Inc.*, 417 F.2d 820 (9th Cir. 1969); *Sylvania Electric Products, Inc. v. Flanagan*, 352 F.2d 1005 (1st Cir. 1965); *Harney v. U. S.*, 306 F.2d 523 (1st Cir. 1962), *cert. denied, sub nom., O'Connell v. United States*, 371 U.S. 911, 83 S.Ct. 254, 9 L.Ed.2d 171 (1962); *U. S. v. Mack*, 249 F.2d 321 (7th Cir. 1957), *cert. denied*, 356 U.S. 920, 78 S.Ct. 704, 2 L.Ed. 715 (1958); *Brown v. Farmer & Ochs Co.*, 209 F.2d 703 (6th Cir. 1954).

His contention in his complaint is that proof of such facts "would discharge [him] from [the] incarceration . . ." that he is now serving. We do not agree that such facts indicate he was removed from "federal custody" or that his release from incarceration would follow from such transfers, but Gale is entitled to assert his claim in a separate suit and have the Government admit the facts of physical transfer as above stated.[15]

Because the Department has searched and has not found the transfer documents, because there is no indication that they do still exist, because no documents of the character requested (removal from federal custody) ever existed, because the records requested are D.C. Court records and exempt from the Freedom of Information and Privacy Acts, and because the government must admit Gale's statements as to his transfers to Superior Court, and because Gale's underlying theory itself is frivolous, his motion to proceed further *in forma pauperis*, on *de novo* consideration should be denied as frivolous under 28 U.S.C. § 1915(d).

It is asserted that Gale's complaint should be remanded to the District Court because

---

**15.** Rule 1004. Admissibility of Other Evidence of Contents

The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if—

(1) Originals lost or destroyed. All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or

(2) Original not obtainable. No original can be obtained by any available judicial process or procedure; or

(3) Original in possession of opponent. At a time when an original was under the control of the party against whom offered, he was put on notice, by the pleadings or other-

wise, that the contents would be a subject of proof at the hearings, and he does not produce the original at the hearing; or

Fed.R.Evid. 1005 provides: Public Records

The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with rule 902 or testified to be correct by a witness who has compared it with the original. *If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given.* (Emphasis added)

of "the Supreme Court's admonition that a *pro se* complaint should be held 'to less stringent standards than formal pleading drafted by lawyers,' *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)." This admonition does not require a court, after it has given the *pauperis* complainant all the benefit of the less stringent pleading standards, to then pander to the legal ignorance of the pleader by upholding a factual claim and a theory that are plainly frivolous.[16]

Nothing is to be gained either for the efficiency of the judicial process, or for the misconceived notion of the appellant that he had been taken from "federal custody" when he was tried in the Superior Court, by sending his case back through the legal maze in order to get another ruling on a point that was obvious from the very beginning, i. e., that Gale was not transferred from federal custody when he was taken from Lorton to the D.C. Superior Court for trial on D.C. offenses, and that the routine daily "come up" lists of prisoners for the dates in question are not sufficiently important to be preserved several years later.

I thus respectfully dissent from this decision to remand this case for reconsideration by the District Court which can only lead to wasting that Court's time, as it has ours, on what is clearly a frivolous chase, even if it existed, for nothing of value.

---

**16.** The principles that compel the dismissal of this case are so fundamental, and so much a part of the every day handling of prisoners in this District, that the frivolous nature of appellant's claims is obvious to the court and to those who daily deal with criminal cases in this jurisdiction.