v.

Garry BASS, individually, and an Assistant Prosecutor with the State's Attorney's Office, James P. Farmer, individually, and as Assistant Public Defender for the City of Baltimore, Maryland, Alfred J. O'Ferrell, III, individually, and as the deputy Public Defender for the State of Maryland, Leonard S. Freedman, individually, and as an Attorney with a practice, J. Harold Grady, individually, and as the Chief Judge of the Supreme Bench of Baltimore, Maryland, Allen D. Greif, individually, and as appointed Public Defender, Thomas E. Kelly, individually, and as a Parole Agent with the Dept. of Parole and Probation for the State of Maryland, Edward Mintzer, individually, and as an Official Court Reporter with the Supreme Bench, James W. Murphy, individually, and as an Associated Justice, assigned to the Supreme Bench, Charles E. Orth Jr., individually, and as the Former Chief Judge of the Md. Court of Special Appeals, Calvin R. Payne, individually, and as an Official Court Reporter with the Supreme Bench, Leonard C. Redmond, III, individually, and as an Assistant Public Defender for the City of Baltimore, Maryland, Julius A. Romano, individually, and as the Former Chief of the Md. Court of Special Appeals, Gerald A. Smith, individually, and as Appointed Public Defender, Norman N. Yankellow, individually, and as Chief Public Defender for the City of Baltimore, Maryland.

Civ. No. W–81–1831.

United States District Court,
D. Maryland.

July 13, 1981.

396

Aaron Holsey, pro se.

WATKINS, Senior District Judge.

The Court holds that this 42 U.S.C. § 1983 claim, filed by an indigent state prisoner, challenging actions which allegedly occurred during a state criminal trial, direct appeal, and in collateral attacks upon the conviction, and in which the plaintiff does not seek release or a reduction of his sentence, but only monetary damages, states a § 1983 claim; however, the claim will be dismissed *sua sponte* as frivolous because it is barred by the statute of limitations and by collateral estoppel. 28 U.S.C. § 1915(d).

## I

Plaintiff, Aaron Holsey, has filed this complaint pursuant to 42 U.S.C. § 1983[1] and he seeks leave to proceed in forma pauperis, 28 U.S.C. § 1915. Leave to proceed will be granted, 28 U.S.C. § 1915(a), the complaint will be docketed, and it will be dismissed as frivolous, 28 U.S.C. § 1915(d). *Boyce v. Alizaduh*, 595 F.2d 948, 950 (4 Cir. 1979). The Clerk of the Court will be directed to tax costs against Holsey as a nonprevailing party. *Duhart v. Carlson*, 469 F.2d 471, 478 (10 Cir. 1972), *cert. denied*, 410 U.S. 958, 93 S.Ct. 1431, 35 L.Ed.2d 692 (1973); *Perkins v. Cingliano*, 296 F.2d 567 (4 Cir. 1961); *Marks v. Calendine*, 80 F.R.D. 24 (N.D.W.Va.1978); *see Hughes v. Rowe*, 449 U.S. 5, 11, 101 S.Ct. 173, 177, 66 L.Ed.2d 163 (1980). This is at least Holsey's second claim based on the same facts.[2]

Holsey, convicted of second degree murder, is serving a twenty year sentence in the Maryland penal system. He has named fifteen defendants in the instant suit. They include state judges, a state prosecutor, state public defenders, a state parole agent, state court reporters, a state court clerk, and a private attorney. The complaint also alleges possible constitutional torts by persons who are not named as defendants; however, given the disposition of this complaint, it would be futile to direct that they be added as parties in this action.[3] Furthermore, this Court need not address the issues of absolute and qualified immunity, which would otherwise be raised. *See, e. g., Imbler v. Patchman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

Briefly, the complaint challenges Holsey's state criminal conviction, direct appeal, and state post conviction proceedings. It does not, and under § 1983 it could not, allege any impropriety in the unfavorable results in any of Holsey's federal applications for relief pursuant to 28 U.S.C. § 2254 and 42 U.S.C. § 1983. Holsey alleges that the various defendants acted under color of state law to deprive him of his constitutional rights.

In presenting the allegations, and in considering a dismissal pursuant to 28 U.S.C. § 1915(d), this Court will assume the veracity of all of the allegations and construe them in the light most favorable to plaintiff, except where they conflict with judicially noticed facts. Therefore, all of the "facts" presented in this Memorandum Opinion are drawn from Holsey's complaint, and they represent unproven allegations for all purposes other than the instant decision. While accepting the veracity of the allegations, the Court will attempt to reorganize them into a more cohesive taxonomy; however, some of the detail will necessarily be obscured by such reclassification. *See Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). "Undoubtedly, a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit". *Id.*

Holsey was arrested in 1971. Since that time, he has been represented by Leonard Freedman, a private attorney hired by Holsey's mother, Harold Glaser, Allen Greif, and Gerald Smith. The latter three attorneys were court appointed. Freedman and

---

1. Even if this Court were to construe plaintiff's complaint as one filed pursuant to other statutory provisions, *e. g.*, 42 U.S.C. § 1985, plaintiff would not be entitled to relief for the reasons set forth more fully, *infra*.

2. In an *ex parte* letter to the Chief Judge of this Court, carbon copy to this chambers, Holsey cited two of his petitions for writs of habeas corpus, Civil No. W–79–77 and W–79–1202. The petitions were consolidated and denied, and an appeal is pending. In his December 3, 1980 letter, Holsey wrote:

   Now pending before Judge Watkins is a civil rights complaint entitled: Holsey v. Bass etc.

which relates to the same general subject matter and parties as did the habeas petition[s].

Thus, Holsey agrees that this is at least the second action which he has instituted on the same facts.

3. Those persons are unnamed guards who "proceeded to ruff plaintiff up." Complaint at 18. For the applicable standard, *see King v. Blankenship*, 636 F.2d 70 (4 Cir. 1980) (guard brutality). The incident allegedly occurred in 1975 and, therefore, it is barred by the statute of limitations. *See* discussion *infra*.

Glaser were trial counsel.[4] Greif was counsel on the motion for new trial and at sentencing. Smith[5] handled the direct appeal, which was concluded when the Maryland Court of Appeals denied certiorari, *Holsey v. State of Maryland*, No. 571 (Ct. Spec.App.1973) (*per curiam*), *cert. denied*, 269 Md. 759 (1973), and the Supreme Court denied certiorari, 419 U.S. 1036, 95 S.Ct. 520, 42 L.Ed.2d 311 (1974). To summarize briefly, Holsey alleges that each of the attorneys ineffectively represented him. A recurring theme is that, while counsel insisted on arguing self-defense, Holsey preferred an assertion of innocence by non-involvement.[6] He also alleges: that suggestive identification procedures were used;

perjury by a non-party named Brown; failure of counsel to consult adequately with their client; use of testimony which was compelled by substandard jail conditions;[7] use of prescribed medications at trial; and belated appointment of counsel,[8] among other complaints.

Holsey alleges falsification of transcripts, records, and reports, including the presentence report. The allegedly false report was allegedly used to deny him parole. The trial transcript, motion for new trial transcript, sentencing transcript, a 1973 Inmate Grievance Commission transcript, an F.B.I. report, and other prison records were allegedly falsified.[9] Furthermore, he alleges

---

4. Holsey's own allegations show that he accepted Freedman as counsel on January 12, 1972, in open court. Glaser was not named as a party. Holsey was also represented by Leonard C. Redmond and James P. Farmer, both of whom were court appointed, in state collateral proceedings.

5. Holsey's allegation against Smith is that Smith argued self-defense on appeal, while Holsey desired to argue other grounds. Smith included an allegedly verbatim copy of Holsey's contentions in the brief submitted to the Court of Special Appeals of Maryland. *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). This Court takes judicial notice of that brief. F.R.Ev. 201. Thus, Holsey's allegation is totally without any factual basis.

6. Holsey makes other allegations, *e. g.*, that Freedman waived a preliminary hearing, that Freedman was retained by Holsey's mother without Holsey's consent, that Holsey was not arraigned, that the state criminal court failed to rule on his pretrial motions, that Freedman failed to request a needed postponement, and that Freedman and Bass (the prosecutor) questioned him in the presence of a police officer. Holsey maintained his innocence during this questioning.

7. *See United States v. Barrett*, 514 F.2d 1241 (5 Cir. 1975) (*per curiam*) (affirming conviction despite lengthy pretrial incarceration under substandard conditions).

8. Holsey alleges that "Freedman was not assigned to his case until the day of trial." Due to a postponement, the trial took place on January 14, 1972. Freedman had been retained by Holsey's mother long before that date. Furthermore, Holsey's own allegations show that he consented to representation by Freedman on January 12, 1972. Thus, the former allegation

is inherently incredible. Much of the delay concerning Holsey's representation by Freedman was caused by Holsey's own actions. In another context, the Maryland Court of Special Appeals has refused to reward a defendant for his own obstinate conduct which interfered with his right to effective representation. *Howell v. Maryland*, 48 Md.App. 89, 425 A.2d 1361 (1981). In a parallel manner, this Court will not reward Holsey's obstinacy. *See also Lucas v. Cowan*, 368 F.Supp. 1142, 1146–48 (W.D.Ky.1973) (belated appointment of counsel).

9. This Court lacks jurisdiction over Holsey's claims that there is false material in his file because he failed to allege that he has asked prison authorities to correct his records. *Paine v. Baker*, 595 F.2d 197, 202 (4 Cir.), *cert. denied*, 444 U.S. 925, 100 S.Ct. 263, 62 L.Ed.2d 181 (1979). "This is not a requirement of exhaustion ... but rather a requirement of jurisdiction." *Id.* (citations omitted).

In alleging that the presentence report contains false information, Holsey makes the conclusory and unsupported allegation that it is "racist." The Court will strike this unsupported allegation. F.R.Civ.P. 12(f). The Court considers such bald allegations to be evidence of malice, justifying a dismissal pursuant to 28 U.S.C. § 1915(d). In any event, if the allegation is sufficient to bring the complaint within the scope of other provisions of the Civil Rights Act, that claim will fail for the same reasons that this § 1983 claim fails. Claims concerning the allegedly false report are presently on appeal in *Holsey v. D'Alesandro*, Civil No. W–77–2157.

Finally, the Court notes that Holsey has raised this identical claim in previous litigation before this Court. "Holsey additionally alleges that the certified copies of the records of his proceedings before the Baltimore City Court

that the Clerk of the Court failed to respond to his communications, denying him due process in 1972.

Holsey alleges constitutional deprivations in his three petitions under Maryland's Uniform Post Conviction Procedure Act, Md. Code Ann. art. 27, § 645A *et seq.* (1957, 1976 Repl.Vol.). Briefly, he alleges bias by the court, imposition of unwanted counsel, ineffective assistance of counsel, conflict of interest, bureaucratic delay, denial of a subpoena for witnesses, battery by unnamed police officers, the absence of "spectators" in the courtroom, a brief (five minute) hearing, perjury, and other errors.

The first state petition was filed in 1974 and, in 1975, the intermediate appellate court refused to review the denial of the petition. The second petition was filed on November 1, 1976 and denied in 1977. A third petition was denied in 1977, and, again, the Court of Special Appeals refused to review the decision.

Holsey alleges a wholesale violation of his constitutional rights, particularly, his first, fourth, fifth, sixth, eighth, and fourteenth amendment rights. He asks for a preliminary and permanent injunction, a declaratory judgment, expungement, redress of all harm, the enjoining of further prosecution, restoration of all privileges, access to the

courts, compensatory and punitive damages from each defendant "except sitting judges," and trial by jury. He also asks that the Court:

> Requires the Defendants to stop forcing unwanted attorneys on to plaintiffs cases.[10] And to stop denying him self representation, bail and appeal bonds. Which are fair and reasonable. *And to stop denying him his right to release thereon.*

Complaint at 29 (emphasis added). This is the only prayer for relief in which plaintiff mentions release.

## II

The initial question posed by Holsey's complaint is whether it should be construed as a complaint pursuant to the Civil Rights Act, 42 U.S.C. § 1983, or as a petition for a writ of habeas corpus, 28 U.S.C. § 2254.[11] "[T]he demarcation line between civil rights actions and habeas petitions is not always clear," *Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 2986, 41 L.Ed.2d 935 (1974); *Preiser v. Rodriguez,* 411 U.S. 475, 500, 93 S.Ct. 1827, 1841, 36 L.Ed.2d 439 (1973), and Holsey's complaint presents issues which are lodged in the interstices between the Civil Rights Act and a petition for writ of habeas corpus. *See Preiser,* 411 U.S. at 500, 93 S.Ct. at 1841.[12] For the

... were ... falsified." *In Re Aaron Holsey,* Civil No. W–76–532 (D.Md., filed March 31, 1976). Holsey was told how to remedy procedural defects in his complaint. When he failed to do so, the complaint was dismissed and the Fourth Circuit affirmed. *Holsey v. Freedman,* 570 F.2d 345 (4 Cir. 1978). The Supreme Court denied certiorari. Thus, the claim has already been fully and finally litigated.

**10.** Holsey has made an *ex parte* request that the Court appoint counsel in this case. *See Lassiter v. Department of Social Services,* —— U.S. ——, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). That request will be rendered moot by this Memorandum Opinion and Order; however, the Court is curious as to why Holsey feels that it is proper for the Court to appoint counsel in this case while enjoining such appointments by others.

**11.** The same issue was presented in *Holsey v. Criminal Court of Baltimore et al.,* Civil No. 74–1062 (D.Md., filed September 24, 1974), *appeal dismissed,* No. 74–8199 (4 Cir., April 14,

1975), *cert. denied,* No. 74–6546 (U.S. October 23, 1975), and in *In Re Aaron Holsey,* Civil No. 76–532 (D.Md., filed March 1, 1976). In the latter case, this Court wrote:

> The allegations directed at these defendants relate to misfeasance and/or malfeasance of counsel during critical stages of Holsey's prosecution. Thus, in effect, they constitute challenges to the validity of Holsey's conviction and the legality of his present incarceration. As such, they would be appropriately raised in a petition for a writ of habeas corpus, with its concomitant requirement of exhaustion of state remedies, but are improvidently brought under the guise of a civil rights action.

The Court of Appeals affirmed and the Supreme Court denied certiorari. Holsey has exhausted his state remedies.

**12.** As a generality, it is correct to say that habeas corpus attacks the fact, duration, or validity of confinement, while the conditions of confinement are challenged in § 1983 claims.

reasons set forth below, this Court will construe the complaint as one made pursuant to the Civil Rights Act.

In *Preiser*, the Supreme Court held that habeas corpus is the exclusive method for challenging the fact, duration, or validity of confinement. *Id.* at 489–90, 93 S.Ct. at 1836. In *Preiser*, however, the Supreme Court also wrote:

> [R]espondents here sought no damages, but only equitable relief ... and our holding today is limited to that situation. If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is *not* an appropriate or available federal remedy.

This statement indicates that a claim for damages cannot be construed as a petition for habeas corpus,[13] and therefore a suit for damages must be denominated as a § 1983 claim.[14]

This conclusion finds support in *Wiggins v. Murphy*, 576 F.2d 572 (4 Cir. 1978) (*per curiam*), *cert. denied*, 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 57 (1979), and *Rimmer v. Fayetteville Police Department*, 567 F.2d 273 (4 Cir. 1977). In these opinions the

Fourth Circuit construed criminal procedure complaints as § 1983 claims. The unpublished opinion in *Brown v. Rouse, et al.*, No. 80–6503 (4 Cir., March 3, 1981) (*per curiam*) (see n.34, *infra*), is in accord with this result. Similarly, in *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court did not construe a § 1983 search and seizure claim for damages as a petition for habeas corpus. The Supreme Court cited both *Wiggins* and *Rimmer*. *Cf. Cramer v. Crutchfield*, 648 F.2d 943 (4 Cir. 1981) (§ 1983 claim arises from search by police).

In *Rimmer*, the plaintiff, without exhausting state remedies, filed a § 1983 claim "for an alleged denial of constitutional rights during the course of a trial on criminal charges in a state court." 567 F.2d at 274. The Fourth Circuit wrote:

> Since it was clear that Rimmer was claiming that his conviction was invalid, the district court might have treated the complaint as one for habeas relief *as well as* a complaint under § 1983, but it did not. In any event, however, the district court is not to be faulted for what it did.

*Id.* at 275 (emphasis added). Because Rimmer had not exhausted his state remedies, a petition for habeas corpus would have been dismissed. *Id.*[15] The Court expressly rec-

---

This generality is basically, but not invariably, true. For example, when the conditions of confinement violate the eighth amendment to the United States Constitution, the redress may be either in habeas corpus or through § 1983. *Bell v. Wolfish*, 441 U.S. 520, 527 n.5, 99 S.Ct. 1861, 1867, 60 L.Ed.2d 447 (1979). The instant case presents another narrow exception to the general rule.

13. For a different construction of the quoted passage, *see Derrow v. Shields*, 482 F.Supp. 1144, 1147 n.5 (W.D.Va.1980). The *Derrow* court argues that the Supreme Court was assuming that a prisoner was not attacking the validity of his or her conviction when he or she filed a § 1983 damages claim. While that is one logical inference which may be drawn from the Supreme Court's opinion, it is not found in the literal language of *Preiser*.

14. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody."

*Preiser v. Rodriguez*, 411 U.S. at 484, 93 S.Ct. at 1833. Many of Holsey's allegations sound substantively in habeas corpus, *e. g.*, ineffective assistance of counsel. If Holsey's counsel was legally ineffective, a writ should issue. *E. g., Grundstrom v. Darnell*, 531 F.2d 272, 273 (5 Cir. 1976). Holsey, however, does not ask for release or a reduction in the time for which he will be detained, and he has already filed several petitions for habeas corpus. Thus, his claim does not fit within the traditional function of habeas corpus. Furthermore, Holsey's custodian was not named as the respondent. *Cf. Holsey v. Keller*, Civil No. W–79–77 and W–79–1202 (petition for a writ of habeas corpus, custodian named as respondent) (D.Md., filed May 23, 1980), appeal pending.

15. In the instant case, if this complaint was to be construed as a petition for a writ of habeas corpus, it would be dismissed as successive. *Sanders v. United States*, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963); *Johnson v. Copinger*, 420 F.2d 395 (4 Cir. 1969); Rule 9 of the

ognized that a "judgment in the civil rights case will necessarily determine the validity or invalidity of the state court conviction." *Id.* The Court then applied the doctrine of collateral estoppel.[16] *See* discussion *infra.*

In *Wiggins,* a plaintiff challenged six state criminal convictions in a § 1983 action. The plaintiff, who was seeking a declaration that the convictions were illegal and expungement, had tried the same issues in state court and lost. The Fourth Circuit affirmed a dismissal based on *res judicata.*

The opinion in *Bradford v. Weinstein,* 519 F.2d 728 (4 Cir. 1974), *vacated as moot,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (*per curiam*), applied the *Preiser-Wolff* doctrine. Because the Supreme Court vacated the Fourth Circuit opinion, this Court places no precedential weight on *Bradford.* The Fourth Circuit did, however, answer in the affirmative to the question:

> [M]ay the prisoners complain of a denial of due process in a suit under 42 U.S.C. § 1983, where the sole basis of their complaint is the manner in which the [parole] proceedings were conducted *and there is no claim that they are entitled to immediate or even earlier release?*

519 F.2d at 729 (emphasis added). The Court wrote that, because "plaintiffs disclaim that the purpose of their suits is to effect their release or to shorten the duration of their confinement," it would "not deem this a case where the suits were close to the core of habeas corpus or 'as close to the core of habeas corpus as an attack on the prisoner's conviction' ...." *Id.* at 733–34.

The Court concluded:

> On the authority of *Preiser* and *Wolff,* we therefore hold that plaintiffs may litigate their due process objections to defendants' parole eligibility proceedings in a suit under 42 U.S.C. § 1983 without the

need for exhaustion under 28 U.S.C. § 2254(b).

But for the fact that the opinion was vacated as moot, *Bradford* would permit a § 1983 damages claim challenging the validity of confinement under a decision of a parole board.

In *Brown v. Rouse,* No. 80–6503 (4 Cir. March 3, 1981) (unpublished) (*per curiam*), a state prisoner sued a state judge, prosecutor, court stenographer, court clerk, and jurors contending that he was denied, *inter alia,* a fair trial and received ineffective assistance from his court-appointed counsel. The Fourth Circuit reversed a holding that this was a petition for a writ of habeas corpus. "Though he is attacking the validity of his conviction, Brown seeks monetary relief for the alleged violations of his constitutional rights, not immediate or speedier release from confinement. *Preiser v. Rodriguez,* 411 U.S. 475, 498, 93 S.Ct. 1827, 1840, 36 L.Ed.2d 439 (1973). Therefore, his claims are cognizable in a § 1983 action." *Id.*

Although these authorities permit a § 1983 claim for damages due to constitutional torts occurring during a trial, there is a significant body of authority to the contrary. In *Derrow v. Shields,* 482 F.Supp. 1144 (W.D.Va.1980), a prisoner, without exhausting state remedies, sued to assert entitlement to a mandatory parole release. *Citing Wolff* and *Bradford v. Weinstein*[17] on the exhaustion issue, the court wrote:

> Neither of these cases provide binding precedent in a situation where, as here, the resolution of the civil rights action will necessarily determine the validity or invalidity of the inmate's state confinement. The question remains an open one in this judicial circuit.

482 F.Supp. at 1147 (also citing *Rimmer*). The court continued:

> Fourth Circuit treated the complaint as one brought pursuant to § 1983.

---

Rules Governing Section 2254 petitions; *see Holsey v. Superintendent Gerald A. Keller,* Civil No. W–79–77 and Civil No. W–79–1202 (D.Md., filed May 23, 1980), appeal pending.

**16.** Because collateral estoppel and *res judicata* do not apply in habeas corpus, *Sanders,* 373 U.S. at 8, 83 S.Ct. at 1073, it is clear that the

**17.** Although the *Derrow* court cited the Fourth Circuit opinion in *Bradford,* it ignored the fact that *Bradford* was vacated in 423 U.S. 147 (1975). *See* 482 F.Supp. at 1146.

[W]e adopt the position of the Court of Appeals for the Fifth Circuit and hold that habeas corpus . . . is the exclusive *initial* [emphasis added] cause of action where the basis of the plaintiff's claim goes to the *fact* or *duration* of his confinement, whereas challenges to conditions of confinement may proceed under section 1983 . . . . We further hold that courts should be governed by these classifications irrespective of the relief sought or the label placed by the petitioner upon such action.

*Id.* at 1148; thus, the court applied a sensible substance over form test.[18]

There are numerous other opinions which state that § 1983 is the proper vehicle for challenging the conditions of confinement, while habeas corpus is the exclusive method of challenging the fact or duration of confinement. *Johnson v. Hardy*, 601 F.2d 172, 174 (5 Cir. 1979); *Drollinger v. Milligan*, 552 F.2d 1220, 1224–25 (7 Cir. 1977) (probationer challenges sentence—seeks partial release); *Mason v. Askew*, 484 F.2d 642, 643 (5 Cir. 1973) (*per curiam*) (plaintiff sought release from prison); *Grundstrom v. Darrell*, 531 F.2d at 273; *Robinson v. Richardson*, 556 F.2d 332, 335 (5 Cir. 1977) (habeas corpus is exclusive *initial* claim with which to challenge conviction); *Davis v. Hudson*, 436 F.Supp. 1210, 1213–14 (D.S.C.1970); *Galloway v. Watts*, 395 F.Supp. 729, 731 (D.Md.1975); *Smith v. Logan*, 311 F.Supp. 898, 899 (W.D.Va.1970).

Those opinions are, however, inapposite. First, many of the courts which have considered this issue have been faced with a prisoner's *initial* claim of constitutional error relating to his or her conviction. This Court is of the opinion that where a plaintiff's *initial* claim, denominated as a complaint under § 1983, challenges the validity of his or her conviction, it is appropriate to construe the claim liberally as a petition for writ of habeas corpus. *See Rimmer*, 567 F.2d at 275. This conclusion is based on the assumption that a rational prisoner would seek release before he or she demanded monetary damages. This, however, is not Holsey's initial claim.[19] He has filed numerous petitions for habeas corpus, and he has filed numerous § 1983 claims. As the Court noted above, *see* n.15, Holsey would be harmed if this Court were, in these circumstances, to construe this complaint solely as a petition for writ of habeas corpus, as the broad holdings of the cases cited above would suggest, because such a petition is undeniably subject to dismissal by the Court *sua sponte* as successive, or possibly as an abuse of the writ. *See* nn. 15, 19 *supra*. The Court concludes that such a wooden application of the rule regarding the categorization of habeas and § 1983 claims is inconsistent with the tenets of liberal construction mandated by *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*per curiam*), and *Gordon v. Leeke*, 574 F.2d 1147 (4 Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431

18. *But cf. Bradford v. Weinstein*, 519 F.2d 728, 733–34 (4 Cir. 1974), *vacated as moot*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). In *Bradford*, the Fourth Circuit wrote: "[P]laintiffs disclaim that the purpose of their suits is to effect their release or to shorten their confinement. Thus, we do not deem this is a case where the suits were close to the core of habeas corpus . . . as discussed and defined in *Preiser*." *Id.; accord, Brown v. Rouse*, No. 80–6503.

19. On the contrary, Holsey currently has numerous complaints pending in this Court. He has filed three state post conviction petitions, at least six federal petitions for writs of habeas corpus, and he has filed numerous civil rights complaints. Holsey's prodigious activity was partially documented in *Holsey v. Collins*, 90 F.R.D. 122 (D.Md.1981). Holsey is aware of

the difference between the various forms of action. *See* n.11 *supra*.

In interpreting this history, the Court notes that plaintiff's "past lack of success is relevant to consideration of his chances of ultimate success here." *Jones v. Bales*, 58 F.R.D. 453, 465 n.4 (N.D.Ga.1972), *aff'd*, 480 F.2d 805 (5 Cir. 1973); *accord, Daye v. Bounds*, 509 F.2d 66, 69 (4 Cir.), *cert. denied*, 421 U.S. 1002, 95 S.Ct. 2404, 44 L.Ed.2d 671 (1975); *Dickinson v. French*, 416 F.Supp. 429, 432 n.6 (S.D.Ala. 1976). In dismissing the instant complaint as frivolous, the Court considers the fact that Holsey has filed numerous unsuccessful suits to be relevant to the resolution of the instant suit, particularly where some of the issues presented in the instant suit are identical to issues raised in the previous litigation.

(1978). Rather where a complaint such as this would be subject to dismissal if construed as a habeas claim, this Court concludes that it must consider the complaint as one made pursuant to § 1983.

■ Another distinction between the cases cited above and the case before this Court is that here the Court is of the opinion that Holsey has expressed his intent as clearly as possible to proceed by way of a § 1983 claim. He filed this complaint on a court form entitled "Form to be used by a Prisoner in filing a Complaint under the Civil Rights Act, 42 U.S.C. Sec. 1983." He asks for, *inter alia*, monetary damages, but he does *not* seek either immediate release or a shortening of his sentence.[20] Thus, while the complaint necessarily challenges both the validity and fact of Holsey's criminal conviction, it is not close to the core of habeas corpus because "the essence of habeas corpus ... is to secure release ...." *Preiser*, 411 U.S. at 484, 93 S.Ct. at 1833. The Court concludes that Holsey intentionally filed a civil rights claim seeking monetary damages for the alleged constitutional deprivations.

■ On the facts presented, and in light of *Allen v. McCurry*, *Wiggins*, and *Rimmer*, there is little practical difference between the categorization of Holsey's complaint as a § 1983 claim or a habeas petition. As will be discussed more fully below, those authorities permit the claim to go forward under the Civil Rights Act, but they impose a weighty obstacle in the form of collateral estoppel. Thus, where, as here, a prisoner is not entitled to a writ of habeas corpus, the ultimate result in a parallel § 1983 claim will be the same as that in those opinions which hold that habeas corpus is the exclusive vehicle with which to challenge the validity or fact of conviction. Under either approach the complaint will be dismissed. Nevertheless, the Fourth Circuit's decision in *Rimmer* is binding upon this Court, and, therefore, Holsey's claim must be categorized as one made pursuant to 42 U.S.C. § 1983. *See also Strader v. Troy*, 571 F.2d 1263, 1269 (4 Cir. 1978). This conclusion has the salutary consequence of demonstrating that § 1983 and § 2254 operate in harmony.

While many of the courts analyzing the interaction between the Civil Rights Act and writs of habeas corpus assume that the two statutes are antagonistic, this assumption seems to be based upon the statistical reality that most habeas corpus petitions are denied and that it would be dissonant to award civil damages based on a constitutionally defective trial to a plaintiff who remains incarcerated based on a determination of guilt which was made at that same trial. *See, e. g., Alexander v. Emerson*, 489 F.2d 285, 286 (5 Cir. 1973) (*per curiam*). One commentator, however, explains how the traditional habeas corpus remedy can operate in tandem with a claim for monetary damages under the Civil Rights Act. Comment, *The Collateral Estoppel Effect to be Given State-Court Judgments in Federal Section 1983 Damage Suits*, 128 U.Pa.L. Rev. 1471 (1980).

---

**20.** Holsey's prayers are scattered throughout the complaint. In response to Question IV of the complaint form prescribed by Local Rule 37A, Holsey demanded the following relief:

> Monitary [sic] Damages. Declaratory Judgment. Injunctive Relief[.] Redress for violations of all constitutional rights. Trial by Jury, Any other relief court deems equitable.

On page 29 he makes a generalized prayer for the defendants to restore "any and all rights and privileges which he would have or should have received or been granted if not for the conduct of the defendants." (Punctuation omitted.)

The only portion of the complaint in which Holsey seeks release is where he requests an appeal bond and bail. That one incidental prayer is insufficient to convert the entire complaint into a petition for a writ of habeas corpus. This salient fact serves to distinguish *Galloway v. Watts* because in *Galloway* the plaintiff alleged that the due process violation at his state criminal trial "invalidates his ... present incarceration ...." 395 F.Supp. at 730; *but see id.* at 731. The plaintiff also sought damages.

To the extent that Holsey seeks generalized relief, such as "Any Further Relief Court Deems Equitable," he may be seeking release; however, this Court will not so construe this generalized pro forma prayer. Holsey has shown himself to be quite capable of articulating a demand that he be released.

Section 1983 damages are designed to be compensatory . . . . [T]he habeas mechanism does not even attempt to compensate for past sufferings; rather, the habeas remedy begins where the section 1983 remedy leaves off. By releasing a defendant from custody, habeas corpus can prevent only future injury. Thus, the habeas-corpus and section 1983 damage remedies do not overlap. They are mutually exclusive, yet complementary remedies that *together* operate to render the injured party whole.

*Id.* at 1494–95.[21] The article continues:

A victorious Section 1983 plaintiff receives, at most, compensatory, and perhaps punitive, damages. Assuming he lost the same claim in state court, his continued imprisonment produces an uncomfortable result—a man remains incarcerated because of an error by a state judge and, despite a federal finding of unconstitutionality, does not necessarily have any method to escape what is arguably an illegal imprisonment.

. . . .

Society has provided a mechanism to create consistency in most such cases—habeas corpus. But the proper procedure is to first force the prisoner to seek habeas relief, if available. If the prisoner prevails in the habeas proceeding, he may then proceed to sue under section 1983 for monetary damages. Whatever collateral-estoppel effect the original state determination had for the purpose of section 1983 would have been removed by the federal redetermination of the constitutional issue in the habeas proceeding.

*Id.* at 1502–03;[22] *cf. Morrison v. Jones,* 551 F.2d 939 (4 Cir. 1977) (favorable termination of criminal prosecution followed by § 1983 claim for malicious prosecution). It is in this hypothetical factual context where there is a significant difference between classifying a complaint such as this one as a petition for a writ of habeas corpus or a § 1983 claim.

Holsey's difficulty in obtaining the benefit of this paradigm stems from the fact that he was unsuccessful in both his state post conviction claims and his federal habeas petitions. As one commentator noted, "If he [the prisoner] is unsuccessful [on his or her federal petition for habeas corpus], then he is collaterally estopped from pursuing section 1983 relief by both a federal and a state determination." *Id.* at 1505.[23] *See* discussion, *infra.*

### III

This Court has jurisdiction, 28 U.S.C. § 1343(a)(3), and venue is proper, 28 U.S.C. § 1391(b).

---

**21.** The cited article has become obsolete in many respects due to the decision in *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed. 308 (1980). Thus, this Court does not present all of the author's conclusions in this opinion, nor does the Court adopt all that is said in the article.

The Court notes that the defenses of absolute and qualified immunity will prevent a plaintiff from recovering damages from many of the defendants who participated in a criminal proceeding.

**22.** Although the word "force" could be construed to imply an exhaustion requirement instead of a reference to the result of an application of an estoppel, this Court need not address the suggestion that an exhaustion requirement be imposed in § 1983 claims. *See Preiser,* 411 U.S. at 494, 93 S.Ct. at 1838; and *Strader v. Troy,* 571 F.2d at 1269. Holsey has exhausted his state remedies. Nevertheless, this Court considers the word "force" to mean that where a habeas petitioner is successful in his or her quest, the petitioner may then bring a § 1983 claim for money damages, free of any estoppel,

in which the petitioner/plaintiff attacks the validity of his or her conviction. If the § 1983 plaintiff pursues his or her claim without first petitioning for habeas corpus, the § 1983 claim would be barred by collateral estoppel where the issues were waived or decided adversely to him or her at trial, on direct appeal, or in state post conviction proceedings. *Rimmer,* 567 F.2d at 276. Thus, "force" has a practical meaning which falls short of a requirement of exhaustion of state remedies.

**23.** This Court is not faced with a situation where a prisoner, without exhausting state remedies, prevailed on a § 1983 claim challenging the validity of his or her conviction and then filed a state post conviction petition based upon an offensive use of collateral estoppel. *See* n.22, *supra.* Such a situation may be avoided because, where a plaintiff's initial § 1983 claim challenges the validity of his or her conviction, it is appropriate to construe the claim liberally as a petition for a writ of habeas corpus. *Rimmer,* 567 F.2d at 275.

## IV

Plaintiff has requested leave to proceed in forma pauperis. 28 U.S.C. § 1915(a).

**24.** The Court, although granting plaintiff leave to proceed as a pauper, finds that certain questions are raised by Holsey's affidavit. He states that his family provided him with approximately $170 during the past year; however, he also claims that his mother is dependent upon him for support.

The Court advises plaintiff that grant of leave to proceed in forma pauperis is a privilege. *Carter v. Telectron, Inc.,* 452 F.Supp. 939, 943 (S.D.Tex.1976). If, at any time in the future, plaintiff's financial status improves, he must pay the filing fee for each and every suit he has initiated. In *Carter v. Telectron, Inc.,* 452 F.Supp. 944, 951 (S.D.Tex.1977), a pro se litigant obtained a judgment for monetary damages. The court declared that he was no longer an indigent *"and directed him to reimburse the United States Government for prepaid filing and service fees in the 40 actions filed by him . . .* which were pending at that time." *Id.* at 951.

If plaintiff should acquire money and spend it for other purposes, he will still be required to pay these fees.

> [I]t is of little moment to this Court that plaintiff has now decided that his funds must be used for other purposes or even that he has exhausted the court award . . . .

*Id.* at 999.

This Court advises plaintiff that he must immediately apprise the Court of ANY change in his financial condition.

> Because plaintiff is no longer indigent, he may no longer prosecute at public expense the large number of actions presently on file in this Court . . . . In determining whether plaintiff should be entitled to proceed to final resolution without prepayment of costs, this Court is not bound by plaintiff's economic status on the date of filing . . . . Rather, the Court should, if necessary, take into account all relevant changes in plaintiff's financial condition, both prior to and subsequent to the filing of suit. Thus, if the allegation of *poverty is no longer true because of a subsequent improvement in the economic status of plaintiff,* it is within the authority of this Court to dismiss the proceeding, *see* 28 U.S.C. § 1915(d); . . . or, . . . require that the costs of the litigation to date be paid by plaintiff in lieu of dismissal.

*Carter v. Telectron, Inc.,* 452 F.Supp. at 942 (citations omitted). This passage was recently quoted in part in *Evans v. Croom,* 650 F.2d 521 (4 Cir. 1981).

To summarize, in plain language, Holsey has an affirmative duty to inform this Court promptly if he receives any money or other assets, *e. g.,* unliquidated default judgment against W. Johnson in Holsey v. Carter, W–79–585. The Court recommends, but does not order, that Holsey include the fact that he has obtained a default judgment upon every Declaration in Support of Request to Proceed In Forma Pauperis.

**25.** Generally, no hearing or service of process is necessary on a dismissal pursuant to 28 U.S.C. § 1915(d). *Boyce v. Alizaduh,* 595 F.2d 948, 950 (4 Cir. 1979). In *Daye v. Bounds,* 509 F.2d 66 (4 Cir.), *cert. denied,* 421 U.S. 1002, 95 S.Ct. 2404, 44 L.Ed.2d 671 (1975), the Fourth Circuit mandated an evidentiary hearing in a dismissal pursuant to § 1915(d). The Court stated twice in its mandate that "[w]e remanded . . . because we were of the opinion that the allegations *if proved* would state a cause of action and that a summary dismissal was inappropriate." *Id.* at 67, 69 (emphasis added). Similarly, in *Taylor v. Gibson,* 529 F.2d 709, 716 (5 Cir. 1976), the district court was reversed because it dismissed a complaint as "completely beyond belief." The Court wrote:

> The lower court made credibility choices without hearing witnesses testify, without observing their demeanor or hearing their testimony subjected to cross-examination. Factual disputes are not so resolved under our system of jurisprudence. Factual allegations may not be brushed aside as "beyond belief" by examining a complaint, affidavits and factual responses. Taylor must have his day in court.

*Id.* at 716.

Because this Court will assume that Holsey's allegations are true, the hearings mandated in *Daye* and *Taylor* are unnecessary. The *Taylor* court, 529 F.2d at 717 n.12, cited *Watson v. Ault,* 525 F.2d 886 (5 Cir. 1976). In *Watson,* as in *Daye* and *Taylor,* the court distinguished between complaints presenting factual issues and those presenting legal questions.

> [T]he district court may employ flexibility and creativity in exercising its discretion under § 1915(d). In some cases, even under the broadest and most liberal standard of pleading, the plaintiff may state no cause of action. If this be the case, then the district court would be correct in dismissing, *after filing,* such a claim as being facially frivolous under 28 U.S.C.A. § 1915(d). In others, the complaint will impose upon the district court a duty to ascertain whether there is any factual basis for the asserted claim. In those cases where a defect is curable, the court should allow amendment.

*Id.* at 892 (emphasis added); *see Scellato v. Department of Corrections,* 438 F.Supp. 1206, 1207 (W.D.Va.1977) (dismissing allegation without a hearing, 28 U.S.C. § 1915(d)) (*quoting Daye v. Bounds,* 509 F.2d at 68).

Thus, under *Boyce, Daye, Taylor,* and *Watson,* where there is no factual issue, the court

Leave will be granted; [24] however, the complaint will be summarily [25] dismissed as frivolous, pursuant to 28 U.S.C. § 1915(d),

which provides that "[t]he court . . . may dismiss the case . . . if satisfied that the action is frivolous or malicious."

■ Grant of leave to proceed in forma pauperis does not absolve plaintiff of all financial responsibility. Where in forma pauperis suits are frivolous, costs may be taxed against the nonprevailing party. *Duhart v. Carlson*, 469 F.2d at 478, *Perkins v. Cingliano*, 296 F.2d 567 (4 Cir. 1961); *Marks v. Calendine*, 80 F.R.D. 24 (N.D.W.Va.1978). Due to plaintiff's history of repetitive litigation, it is appropriate to tax costs against plaintiff in this case.

The Fourth Circuit has concisely enunciated the competing policy considerations reflected in § 1915(d). On the one hand, the *in forma pauperis* provision provides access to the courts for indigents with meritorious claims. This is particularly vital in the prison context. On the other hand, "Federal courts must be diligent in acting to prevent state prisoners from calling upon the financial support of the federal government to prosecute frivolous civil suits intended to harass state prison officials." *Daye v. Bounds*, 509 F.2d 66, 68–69 (4 Cir.), *cert. denied*, 421 U.S. 1002, 95 S.Ct. 2404, 44 L.Ed.2d 671 (1975); *accord Evans v. Croom*, 650 F.2d 521 (4 Cir. 1981); *Carter v. Telectron, Inc.*, 452 F.Supp. 944, 950 (S.D.Tex. 1977). The Fourth Circuit wrote: "We cannot permit . . . any . . . state prisoner to engage in a ceaseless barrage of frivolous civil suits at public expense based upon allegations that have been repeatedly found meritless . . . . Under these circumstances

dismissal pursuant to 28 U.S.C. § 1915(d) is warranted." *Id.* at 69.

■ Thus, "especially broad discretion has been vested in federal district courts to deny state prisoners the privilege of proceeding in forma pauperis in civil actions against officials of the institution in which they are incarcerated." *Id.* at 68; *accord, Boyce v. Alizaduh*, 595 F.2d at 951; *Milton v. Nelson*, 527 F.2d 1158, 1160 (9 Cir. 1976). There are at least four policy considerations which support reasoned, judicious dismissals pursuant to § 1915(d). *Boyce*, 595 F.2d at 951 n.6. First, frivolous suits unduly burden the courts, *Carter v. Telectron, Inc.*, 452 F.Supp. 944, 949 (S.D.Tex.1977), sometimes obscuring meritorious claims, *e. g., Raitport v. Chemical Bank*, 74 F.R.D. 128, 130 (S.D. N.Y.1977). Second, they cause a significant expenditure of public monies. *See Carter v. Telectron, Inc.*, 452 F.Supp. 939, 944 (S.D. Tex.1976).[26] Third, because there is no filing fee, some prisoners file complaints in the hope of a "short sabbatical to the nearest federal courthouse." *Boyce v. Alizaduh*, 595 F.2d at 951 n.6 and *Collins v. Cundy*, 603 F.2d 825, 828 (10 Cir. 1979), both *quoting Cruz v. Beto*, 405 U.S. 319, 327, 92 S.Ct. 1079, 1084, 31 L.Ed.2d 263 (Rehnquist, J., dissenting opinion); *accord, Evans v. Croom*, 650 F.2d 521 (4 Cir. 1981). Finally, as noted above, frivolous § 1915(d) suits permit a plaintiff to utilize the vast resources of the federal government to harass or burden an individual defendant. *Daye v. Bounds*, 509 F.2d at 68–69. The burden placed on a defendant is not just a minor inconvenience. "The instant action has cost the plaintiff nothing but some time and

need not hold an evidentiary hearing. *See Collins v. Cundy*, 603 F.2d 825, 827 (10 Cir. 1979). This Court will, for purposes of this opinion, assume that all of plaintiff's consistent allegations, except those which conflict with judicially noticed facts, *Taylor v. Gibson*, 529 F.2d at 717, are true. Even with the benefit of this assumption, plaintiff's claim is frivolous.

26. The burden imposed on the courts by prisoner's claims, as well as the cost to the public of such claims, is demonstrated by statistics published in the Annual Report of the Director of the Administrative Office of the United States Courts. During the twelve months ending on June 30, 1980, 2,668 state prisoner petitions were filed in the courts of appeal. This represented a 34.9 percent increase over 1979. State prisoner petitions constituted 11.5 percent of the total filings in the courts of appeal. "The most significant impact of state prisoner petitions on appellate workload was in the Fourth Circuit, where 32.2 percent of all state prisoner appeals were filed. These petitions represented 38.9 percent of all cases filed in the Fourth Circuit." *Annual Report of the Director of the Administrative Office of the United States Courts: Reports of the Proceedings of the Judicial Conference of the United States Held in Washington, D.C.* (1980), 202.

postage. The defendants, collectively, by a conservative estimate, have already spent tens of thousands of dollars . . . ." *Raitport v. Chemical Bank*, 74 F.R.D. at 133. Thus, one court has stated that a pauper's affidavit is not a broad highway into the federal courts. *Jones v. Ault*, 67 F.R.D. 124, 127 (S.D.Ga.), *aff'd without opinion*, 516 F.2d 898 (5 Cir. 1974).

█ Pro se complaints are to be liberally construed, and the lay pleader is not to be held to the technical niceties of an attorney. *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (*per curiam*); *Gordon v. Leeke*, 574 F.2d 1147 (4 Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978).[27] There is, however, a dispute between the circuits as to whether this standard of liberal construction also applies to a determination that a complaint is frivolous or malicious, 28 U.S.C. § 1915(d). The Tenth Circuit, recognizing the various motives behind in forma pauperis claims, wrote:

> Whereas in understanding a pleading leniency is necessary to counteract the plaintiff's lack of legal expertise, the same degree of predisposition in favor of

the pro se plaintiff is not called for when a determination is made under § 1915(d). *Serna v. O'Donnell*, 70 F.R.D. 618, 621 (W.D.Mo.1976).

Simply because one is indigent, there is no constitutional right to the expenditure of public funds and the valuable time of federal courts to prosecute an action which is totally without merit. *See . . . Daye v. Bounds, supra* [4 Cir.].

*Collins v. Cundy*, 603 F.2d at 828. The Fourth Circuit, however, after noting the same possible motives, has mandated liberal "predisposition" under § 1915(d), *Boyce v. Alizaduh*, 595 F.2d at 952, and this Court will apply the *Boyce* rule.

In *Boyce*, the Fourth Circuit enunciated the following test for frivolity:

> To satisfy the test for frivolousness under § 1915(d), it is accordingly essential for the district court to find "beyond doubt" and under any "arguable" construction, "both in law and in fact" of the substance of the plaintiff's claim that he would not be entitled to relief.

*Boyce v. Alizaduh*, 595 F.2d at 952 (citations omitted).[28]

---

**27.** This Court is of the opinion that it is proper to apply a sliding scale of liberality in construing a pro se complaint. *See Brown v. Califano*, 75 F.R.D. 497, 499 (D.D.C.1977). Where a person has filed numerous suits, and has received guidance from the Court in a previous suit, that person is not entitled to as liberal treatment as one who has not been so instructed. The experienced pro se litigator should be held to a higher standard than the novice. In *Raitport v. Chemical Bank*, 74 F.R.D. at 133 (citations omitted), the court wrote:

> This is not a case involving an uneducated, naive plaintiff who may have inartistically stated a valid cause of action . . . . Mr. Raitport has spent more time in court than many lawyers . . . .
>
> He comes before this Court wearing the cloak of a *pro se* applicant, and seeks to extract from us the solicitude ordinarily afforded one appearing without counsel. But this should not shield him from rebuke when merited. He is an intelligent, able and sophisticated litigant who is no stranger to this Court . . . . Moreover, we are not to be manipulated by resourceful but meritless moves . . . [which] serve only to distract us from important judicial business.

In *Brown*, the court wrote:

> Ordinarily, the remedy for noncompliance with Rule 8(a) is dismissal with leave to amend . . . . But where, as here, the plaintiff has shown that he is no stranger to the courts, having filed seven previous lawsuits akin to this one, dismissal with prejudice is not inappropriate.

75 F.R.D. at 499 (citations omitted).

Holsey is similarly no stranger to this Court and he has shown the ability to present his multifarious claims in a sophisticated and able manner, although he has been generally unsuccessful. *See* n.19 *supra*. As this Court noted in *Holsey v. Collins*, 90 F.R.D. at 128, Holsey is articulate and intelligent, and he is able to understand and follow the instructions of this Court. Therefore, this Court will apply a sliding scale of liberality in evaluating Holsey's pleadings by, where it is appropriate, holding Holsey to a higher standard of pleading than is ordinarily imposed on a novice pro se litigant. *See Holsey v. Collins*, 90 F.R.D. 122 (D.Md. 1981).

**28.** The *Boyce* standard is much more liberal than the standard adopted by other courts. *See Boyce v. Alizaduh*, 595 F.2d at 952 n.8. In *Daves v. Scranton*, 66 F.R.D. 5, 7 (E.D.Pa. 1975), the court wrote:

## V

There is a split of authority as to whether a court can consider affirmative defenses in ruling pursuant to § 1915(d) that a complaint is frivolous or malicious. *Compare Daves v. Scranton*, 66 F.R.D. 5, 7 (E.D.Pa.1975) (court can consider affirmative defense *sua sponte*) *with Sinwell v. Schapp*, 536 F.2d 15, 19 (3 Cir. 1976) (court cannot dismiss *sua sponte* on the grounds of improper venue because venue is a waivable defense). Generally, it is the duty of the defendant to plead affirmative defenses, and the court cannot raise such defenses *sua sponte*. F.R.Civ.P. 8(c).[29] This Court concludes, however, that given the competing policy considerations reflected in § 1915(d), discussed *supra*, such defenses

A dismissal under § 1915(d) does not necessarily constitute a finding that under the allegations of the complaint it appears beyond doubt that plaintiff could prove no set of circumstances upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) [footnoting *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)], although such a finding upon examination of the complaint is grounds for dismissal under § 1915(d) as well. *Allison v. Wilson*, 434 F.2d 646 (9th Cir. 1970) [*cert. denied*, 404 U.S. 863, 92 S.Ct. 43, 30 L.Ed.2d 107 (1971)]; *Fletcher v. Young*, 222 F.2d 222, 224 (4th Cir. 1955) [*cert. denied*, 350 U.S. 916, 76 S.Ct. 201, 100 L.Ed. 802 (1955)]. The judgment which I must make is whether the complaint states a claim which has a reasonable probability of succeeding on the merits.

*Accord Gale v. United States Dept. of Justice, Federal Bureau of Prisons*, 628 F.2d 224, 230–31 (D.C.Cir.1980) (dissenting opinion); *Jones v. Ault*, 67 F.R.D. 124, 127 (S.D.Ga.) (citing Second and Fifth Circuits), *aff'd without opinion*, 516 F.2d 898 (5 Cir. 1974); *see Cleaveland v. Warden*, 80 Civ. 7211 (S.D.N.Y., filed March 23, 1981); *cf. Collins v. Hladky*, 603 F.2d 824, 825 (10 Cir. 1979) (test is whether plaintiff can make a rational argument on law or facts); *see generally* Annot. 52 A.L.R.Fed. 678 (1981). The reasonable probability test was expressly rejected in *Boyce*: "We, however, are not certain that such a rule can be squared with the language of the [Supreme] court in *Haines* [404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652] and *Estelle* [*v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251] and we are inclined to accept the definition of frivolity stated in *Watson* [525 F.2d 886, 892], quoted in the text." 595 F.2d at 952 n.8. *But cf. Fletcher v. Young*, 222 F.2d 222, 224 (4 Cir.) (*per curiam*) ("Power to dismiss an action on motion under 28 U.S.C. § 1915(d) on the ground that it is frivolous is not limited or impaired by the provisions of Rule 12(b) of the Rules of Civil Procedure, 28 U.S.C."), *cert. denied*, 350 U.S. 916, 76 S.Ct. 201, 100 L.Ed. 802 (1955).

The *Boyce* court's holding has been strongly criticized. Thus, in *Harvey v. Clay City Sheriff's Department*, 473 F.Supp. 741, 743 (W.D. Mo.1979), the district court stated:

In finding a claim is frivolous, the court must
*Boyce* assumes that standards of frivolity must be determined by reference to standards of pleading under the Federal Rules of Civil Procedure. The equation fails for a number of reasons.

The *Harvey* court's extensive criticism is merely noted by this Court. The standard applied in *Harvey* and *Daves* is not the standard to be utilized in this circuit, and any dispute as to the proper standard cannot be resolved by this Court.

This Court notes, however, that the rule enunciated in *Boyce* represented a departure from the established Fourth Circuit standard. Thus, *Boyce* must be read to reject *Mann v. Leeke*, 73 F.R.D. 264 (D.S.C.), *aff'd*, 551 F.2d 307 (4 Cir. 1974), and *Scellato v. Department of Corrections*, 438 F.Supp. 1206 (W.D.Va.1977). *See Boyce*, 595 F.2d at 952 n.8. In *Mann*, the district court based its holding on *Jones v. Bales*, 58 F.R.D. 453 (N.D.Ga.1972), *aff'd*, 480 F.2d 805 (5 Cir. 1973). *Quoting Jones*, the district court in *Mann* wrote:

In light of 1915(d)'s general purpose, the specific term "frivolous" refers to an action in which the plaintiff's realistic chances of ultimate success are slight . . . .

73 F.R.D. at 255. The district court held that, because the plaintiff's "realistic chances of ultimate success" were "less than slight," the complaint was frivolous and the Fourth Circuit affirmed the dismissal. *Mann* was cited in *Boyce*, 595 F.2d at 950, on a different point; however, while the Fourth Circuit criticized *Jones*, which is the basis for *Mann*, it did not expressly overrule *Mann*.

Also impliedly rejected is *Scellato v. Department of Corrections*, 438 F.Supp. 1206 (W.D. Va.1977). In *Scellato*, the court wrote:

In finding a claim is frivolous, the court must determine, on a factual and legal basis, if the claim has any arguable merit or *realistic chance of success*. *Taylor v. Gibson*, 529 F.2d 709 (4th Cir. 1976) [sic—5th Cir.]; *Watson v. Ault*, 525 F.2d 886 (5th Cir. 1976).

*Id.* at 1207 (emphasis added). The realistic chance of success test is not the test utilized in *Boyce*.

29. A discussion of the historical basis for this rule is found in 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1201–02 (1969).

should be considered by a court *sua sponte*, in certain limited circumstances, such as those found in the case at bar, in determining whether a complaint is frivolous or malicious.

In *Graham v. Riddle*, 554 F.2d 133 (4 Cir. 1977), the Fourth Circuit affirmed an order of the district court conditioning a plaintiff's right to file complaints upon "good cause shown." Graham, a prisoner, had filed repetitive "food complaint[s]." The court made it clear that, when a district court experiences a "plethora of frivolous, repetitive complaints," it acts within its discretion by dismissing a repetitive complaint. This ruling can only be interpreted as an application of *res judicata* to bar such a claim. The Court authorized the use of good cause orders which apply to all litigation concerning the same facts. Dismissal of one complaint as frivolous, which is the action taken on the instant complaint, is a less drastic measure than the action approved of in *Graham*.

Similarly, in *Dickinson v. French*, 416 F.Supp. 429 (S.D.Ala.1976), the civil plaintiff alleged a conspiracy to create an atmosphere of bias during his criminal trial. The court held that a dismissal under § 1915(d) was appropriate where the plaintiff was engaged in repetitive litigation concerning issues already determined, *id.* at 432, and dismissed the case. The dismissal occurred prior to service of process, and therefore the estoppel could not have been affirmatively raised.

In *Ruth v. First National Bank of New Jersey*, 410 F.Supp. 1233 (D.N.J.1976), a complaint was docketed and dismissed as frivolous without service of process. The court, in the civil case, judicially noticed the records of a prior criminal proceeding. *Accord Daye v. Bounds*, 509 F.2d 66, 68–69 (4 Cir.), *cert. denied*, 421 U.S. 1002, 95 S.Ct. 2404, 44 L.Ed.2d 671 (1975); *see* 4th Cir.R. 18(d)(ii). In *Ruth*, the court wrote:

> Ruth's claim amounts to an effort to reap the benefits of the wire fraud of which he

was convicted. That conviction is evidential by reason of Fed.Ev. Rule 803(22), and since it involves the same transaction as involved here, there is no way to refute it.

410 F.Supp. at 1234. Thus, the court raised a collateral estoppel defense *sua sponte, citing Van Meter v. Morgan*, 518 F.2d 366 (8 Cir.) (*per curiam*), *cert. denied*, 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975). In *Van Meter*, the court affirmed the docketing and dismissal as frivolous of a prisoner's 42 U.S.C. § 1983 claim. The prisoner had filed ten suits, and the instant complaint was redundant because it involved an identical defendant and the same facts. The trial court's order, *id.* at 367, shows that the trial court considered "plaintiff's complaint." The district court did not write that it had considered any responsive pleading. Thus, collateral estoppel must have been raised *sua sponte*. *Cf. Brown v. Compton*, 466 F.2d 1384 (5 Cir. 1972) (*per curiam*). (Leave to file in forma pauperis was denied. The complaint was barred by *res judicata*; however, it is unclear whether the defendant or the court raised the defense.) In a companion case to *Ruth v. First National Bank*, the district court wrote that one example of a frivolous case "is repetitive litigation on issues already determined." *Ruth v. Congress of the United States, Washington, D. C.*, 71 F.R.D. 676, 679 n.7 (D.N.J.1976) (citation omitted).

In *Daves v. Scranton*, 66 F.R.D. 5 (E.D. Pa.1975), the court dismissed a pro se damage suit filed pursuant to §§ 1983, 1985. Plaintiff, an indigent prisoner had sued the prosecutrix, the prosecutor, a newspaper, and four police officers involved in his criminal case, for monetary damages. He petitioned for leave to proceed in forma pauperis. The court wrote:

> The judgment which I must make is whether the complaint states a claim which has a reasonable probability of succeeding on the merits [30] .... In evaluating this complaint I must assess *inter alia*, the existence of possible defenses.

---

30. The reasonable probability of success test is not the test used in the Fourth Circuit. *See* discussion, *supra*.

*Id.* at 7 (citations omitted). The court considered the defenses of truth, qualified privilege, prosecutorial immunity, and the statute of limitations. *Id.* at 7–8. Limitations is an affirmative defense. F.R.Civ.P. 8(c). The *Daves* court found that the complaint was frivolous.[31] *See Mastracchio v. Ricci,* 498 F.2d 1257 (1 Cir. 1974), *cert. denied,* 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975) (affirming action by district court granting summary judgment *sua sponte,* based on *res judicata* effect of prior state criminal conviction); *Boyce v. Alizaduh,* 595 F.2d at 950; *Curley v. Bryan,* 362 F.Supp. 48 (D.S. C.1973).

The court in *Raitport v. Chemical Bank,* 74 F.R.D. 128 (S.D.N.Y.1978), considered affirmative defenses *sua sponte* in a dismissal pursuant to § 1915(d). In a parallel, but not identical, context, the court wrote:

> This [Second] Circuit has a rather strict rule against the Court dismissing actions "*sua sponte.*" [Citations omitted.] However, this [estoppel] issue has already been raised and briefed. [After noting that some, but not all, of the defendants had raised the estoppel defense, the court continued:] [I]t can be anticipated that in due time all [of the remaining defendants] will make similar motions. No conceivable purpose can be served by awaiting the receipt of motion papers from the less diligent counsel. . . .
>
> The collateral estoppel defense is clearly applicable . . . . From the standpoint of all defendants, the action is sham and frivolous. 28 U.S.C. § 1915(d).

*Id.* at 134.

As was noted at the outset of this discussion, the authorities are not unanimous in holding that the courts, acting pursuant to § 1915(d), can consider waivable affirmative defenses. In *Sinwell v. Schapp,* 536 F.2d at 19, the Third Circuit noted that there is no express provision in § 1915(d) which authorizes such action and it held that it was error to dismiss *sua sponte* for improper venue. *Accord Purdue v. Rockefeller,* 75 Civ. 193 (N.D.N.Y.1975), *vacated* No. 75–8102, Order (2 Cir. June 3, 1975), as reported in Robbins, *Prisoner's Rights Sourcebook* (Clark Boardman Co., Ltd. 1980), 182.

This Court, however, is persuaded by opinions which permit *sua sponte* consideration of affirmative defenses in the § 1915(d) context.[32] The Court must carefully balance the pauper's right of equal access to the courts with its duty to protect defendants from the costs imposed by frivolous suits. Where defenses such as statute of limitations or *res judicata* and collateral estoppel are clear on the face of the complaint or through judicially noticed facts, it would verge on malpractice for defense counsel to ignore these defenses, *see Raitport,* 74 F.R.D. at 134; *Lomax v. Smith,* 501 F.Supp. 119, 121 (E.D.Pa.1980), although concededly such defenses have been waived by litigants.[33] If a plaintiff wishes to see if

---

**31.** In *Daves,* 66 F.R.D. at 8, the court denied leave to proceed in forma pauperis and dismissed the complaint. It would be more proper to grant leave to proceed, 28 U.S.C. § 1915(a), and to dismiss the complaint as frivolous, 28 U.S.C. § 1915(d).

**32.** In addition to the cited authorities, *see* Judge Tjoflat's concurring and dissenting opinion in *Meadows v. Evans,* 550 F.2d 345, 347, 352 (5 Cir.), *cert. denied,* 434 U.S. 969, 98 S.Ct. 517, 54 L.Ed.2d 457 (1977). Judge Tjoflat specifically discussed the possibility that in a pre-filing review of a pro se complaint, "the complaint itself" might "indicate" that the doctrine of collateral estoppel was applicable. *Id.* He was of the opinion that the case which was before the court was such a case.

It is instructive to note that, in the context of a petition for a writ of habeas corpus, where a petitioner's *liberty* interests are implicated, a court can raise the successiveness issue *sua sponte* if the issues in the subsequent petition are identical to those raised in a previous petition. *Johnson v. Copinger,* 420 F.2d at 398. If a court can take such action where liberty is at issue, it does not seem inappropriate to raise collateral estoppel *sua sponte* pursuant to § 1915(d) in an in forma pauperis damages claim.

**33.** It may be argued that, if it is so simple for defense counsel to defeat the complaint, service of process does not unduly burden the defendants. This argument ignores the existence and purpose of § 1915(d). In that section, Congress instructed the courts to protect defendants against frivolous pauper's suits. Furthermore, numerous, repetitive suits could impose a significant burden on defendants, even if it is relatively simple to defeat the claim. *See Raitport,* 74 F.R.D. at 133.

affirmative defenses will be waived by the defendant the plaintiff can pay the filing fee and foreclose the courts from raising the defenses *sua sponte.* F.R.Civ.P. 8(c). Where, however, service of process will utilize federal resources to burden defendants, the Court is of the opinion that Congress, in § 1915(d), has carved out a very limited exception to Rule 8(c). Therefore, this Court holds that where there are obvious and complete affirmative defenses raised on the face of the complaint or by the court

records, a court may consider these defenses in making a determination pursuant to § 1915(d) that the complaint is frivolous or malicious. *Ruth v. Congress of the United States, Washington, D. C.,* 71 F.R.D. 676, 679 n.7 (D.N.J.1976) (*dicta*).[34]

## VI

Two independent affirmative defenses, the statute of limitations and collateral estoppel, are raised on the face of the com-

**34.** The Court has found no clear published holding in this circuit upon which to base its opinion; however, this Court is persuaded that *Graham* and the other cited authorities permit the action it takes today. The plaintiff's pleading will be liberally construed pursuant to *Haines* and *Gordon v. Leeke.* All facts will be viewed in the light most favorable to plaintiff. He will receive the benefit of a liberal definition of frivolity, as mandated in *Boyce v. Alizaduh.* To ignore obvious affirmative defenses would be inconsistent with the broad discretion conferred upon district courts by § 1915(d), and it would effectively render the frivolous or malicious provisions of the statute almost a nullity.

The Fourth Circuit has indicated that there should be no distinction between an in forma pauperis suit and a suit filed after payment of fees, *citing Williams v. Field,* 394 F.2d 329 (9 Cir.), *cert. denied,* 393 U.S. 891, 89 S.Ct. 213, 21 L.Ed.2d 171 (1968); *Boyce,* 595 F.2d at 951 n.7. In *Williams,* the Ninth Circuit affirmed a dismissal *sua sponte* based on § 1915(d) after the district court had examined its records of the civil rights plaintiff's state post conviction proceedings. This Court, like the *Williams* court, will dismiss Holsey's complaint *sua sponte* because it finds the complaint to be frivolous in light of its records.

Two unpublished *per curiam* opinions of the Fourth Circuit support this Court's conclusion that it can consider affirmative defenses *sua sponte* in the case at bar. In *Hairston v. Morris, et al.,* No. 81–6209, (4 Cir. May 14, 1981) (*per curiam*), a prisoner appealed from the district court's *sua sponte* dismissal of his § 1983 claim. The Fourth Circuit affirmed, holding, *inter alia;* "Hairston's first allegation has been litigated in a previous case; consequently, principles of res judicata bar relitigation of the issue. *Wiggins v. Murphy,* 576 F.2d 572 (4th Cir. 1978), *cert. denied,* 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 57 (1979); *Crowe v. Leeke,* 550 F.2d 184 (4th Cir. 1977)." *Hairston* demonstrates *sub silentio* that *Boyce* does not bar the action taken by this Court today.

In an unpublished 1977 *per curiam* opinion, the Fourth Circuit wrote:

Without requiring a response from the defendants, the district court dismissed the pe-

tition as frivolous on the ground that all of the actions complained of occurred prior to 1970 and were therefore barred by the applicable statute of limitations. Cornish has appealed from that dismissal.

... The *statute of limitations* is not to be used to dismiss a complaint unless it is pleaded by the defendant *or appears conclusively from the complaint. Barnhart v. Western Maryland Ry.,* 41 F.Supp. 898 [902] (D.Md. 1941) [*dicta*] [raised by motion to dismiss] *aff'd* 128 F.2d 709 (4 Cir. 1942) [*cert. denied,* 317 U.S. 671, 63 S.Ct. 75, 87 L.Ed. 538 (1942)] [laches].

*Cornish v. Harlan,* 562 F.2d 45 (4 Cir. 1977) (emphasis added); *contra, Allard v. Connor,* 622 F.2d 581 (4 Cir. 1980) (citing a non-pauper case); *Nutall v. Six (6) Unknown Guards at the Richmond City Jail,* 618 F.2d 102 (4 Cir. 1980) (citing only *Sinwell* ). Thus, in *Cornish,* while the Fourth Circuit disagreed with the way in which the district court applied limitations, it did not question the court's decision to apply limitations *sua sponte.*

Citation of unpublished opinions is disfavored by the Fourth Circuit. 4th Cir.R. 18(d)(ii). It is, however, permitted by the Fourth Circuit's rules, and those rules make it clear that an "unpublished disposition" may have "precedential value ...." *Id.* at 18(d)(iii); *see generally* Reynolds and Richman, *Limited Publication in the Fourth and Sixth Circuits,* 1979 Duke L.J. 807, 813 (1979). In *Jones v. Superintendent, Virginia State Farm,* 465 F.2d 1091, 1094 (4 Cir. 1972), *cert. denied,* 410 U.S. 944, 93 S.Ct. 1380, 35 L.Ed.2d 611 (1973), the Fourth Circuit conceded that "any decision" is "a precedent"; however, the Court refused to treat unpublished opinions "as precedent within the meaning of the rule of stare decisis." Fourth Circuit Rule 18 has, in part, superseded *Jones* as discussed *supra.* Walker, *Wake Forest's Student Appellate Advocacy Program,* 87 F.R.D. 233, 235 n.15. Rule 18(d) was added to the Fourth Circuit Rules in 1976. This Court is of the opinion that the 1981 *per curiam* opinion in *Hairston* has "precedential value" and that it properly applies *Wiggins* in a context which is identical to the case at bar.

plaint. Each defense will be discussed below.

**A.** Much of plaintiff's claim is barred by the statute of limitations. Because there is no express period of limitations in the Civil Rights Act, federal courts apply the appropriate state statute of limitations to a § 1983 claim. *Cramer v. Crutchfield,* 648 F.2d 943 (4 Cir. 1981); *Cox v. Stanton,* 529 F.2d 47, 49 (4 Cir. 1975); *McDonald v. Boslow,* 363 F.Supp. 493, 494 (D.Md.1973).

Maryland law provides that civil actions must be filed within three years of the date on which the cause of action accrues [35] unless a different period is specified by law. Md.Cts. & Jud.Proc. Code Ann., § 5–101. Imprisonment does not toll the running of the statute. *Id.* at § 5–201(c). Because the state rule on tolling the statute of limitations is not inconsistent with federal law, this Court will follow the state rule. *Cramer,* 648 F.2d at 945.

Plaintiff filed this complaint on March 27, 1980. Consequently, claims accruing from events which occurred prior to March 27, 1977 are time barred. Most of Holsey's claims fall into this category. His criminal trial took place in 1972, the Court of Special Appeals affirmed in 1973, the Court of Appeals denied certiorari in 1974, and the United States Supreme Court denied certiorari in 1974. The first state post conviction [36] proceeding and appeal, as well as the second state post conviction proceeding [37] took place prior to March 27, 1977. The appeal from the second proceeding was decided unfavorably to Holsey. Although Holsey failed to give the exact date of that decision, and applying a sliding scale of liberality, the Court will presume that the allegation relating to that decision is time barred, because Holsey's third state post conviction petition was submitted on March 17, 1977, and the Court assumes that Holsey waited for the decision of the appellate court on his second petition before he filed the third petition. In any event, no § 1983 claim has been stated against the Maryland Court of Special Appeals on the grounds that it denied Holsey's second petition.

Holsey has failed to allege facts sufficient to determine when his claims for falsification of transcripts accrued. As noted in n.9 *supra,* this Court lacks jurisdiction over the claims; however, the Court also notes that the alleged wrongs occurred prior to March, 1977. Holsey alleges that he first became aware of some of the falsifications when an unnamed attorney mailed the transcripts to him in 1979. In light of n.9, *supra,* the Court need not determine when Holsey knew or should have known of the alleged falsifications, nor could the Court make such a determination at this stage of the proceeding. In his complaint in *Holsey v. D'Alesandro,* Civil No. W–77–2157 at 3 ¶ 2A, however, Holsey stated that he had knowledge of the false presentence report as early as 1976.

> On September 15, 1976 a parole agent let me view the folder containing papers to be considered by the Parole Board, during my parole hearing scheduled for November 2, 1976. Contained therein were false, damaging, and slanderous documents, which were as follows: *A*—A copy of the Pre-sentence Report made during 1972 . . . .

"This Court was particularly impressed with the fair and adequate representation which Mr. Redmond provided Holsey at the post-conviction hearing despite a lack of cooperation on Holsey's part." *Holsey v. Superintendent Gerald A. Keller,* Civil No. W–79–77 and Civil No. W–79–1202, appeal pending.

---

**35.** Although the limitation period is governed by state law, "[t]he time of accrual of a civil rights action is a question of federal law." *Cox,* 529 F.2d at 50. The time of accrual is when plaintiff knows or has reason to know of the injury which is the basis of the action. *Id.; cf., Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981).

**36.** The first petition was heard by defendant Judge Grady. Holsey was represented by Leonard Redmond, court-appointed counsel.

**37.** Judge Karwacki denied plaintiff's second petition. He is not named as a defendant in this suit.

Thus, even if this Court had jurisdiction over Holsey's claims, many of them would be time-barred. The complaint in *Holsey v. D'Alesandro* was dismissed, and an appeal is pending.

Some of Holsey's complaints are not barred by limitations; however, they are frivolous on other grounds. For example, Holsey alleges "errors" by Judge Dorf in his April 14, 1977, Memorandum and Order denying Holsey's third state post conviction petition. The Maryland Court of Special Appeals denied leave to appeal, and a federal § 1983 claim is not a substitute for direct appeal. Thus, no claim is stated by this allegation of error.

For this reason the complaint will be dismissed as frivolous. 28 U.S.C. § 1915(d).[38]

B. Alternatively, application of the doctrine of collateral estoppel also renders Holsey's claim frivolous. *Allen v. McCurry*, 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Wiggins v. Murphy*, 576 F.2d 572, 573 (4 Cir. 1978) (*per curiam*), *cert. denied*, 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 57 (1979); *Rimmer v. Fayetteville Police Department*, 567 F.2d 273, 276 (4 Cir. 1977). In *Allen v. McCurry*, the Supreme Court held that collateral estoppel [39] is applicable to a § 1983 claim. McCurry, in his criminal trial, made a motion to suppress evidence on the grounds that the evidence had been obtained in violation of the fourth and fourteenth amendments. The state tri-al court denied the motion and the conviction was affirmed by the state appellate court. Because *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), operated to bar a petition for a writ of habeas corpus, McCurry brought an action pursuant to 42 U.S.C. § 1983 against the officers who had entered his home and seized the evidence in question. The district court granted summary judgment for the defendants, and the Eighth Circuit reversed. The Supreme Court reversed the Court of Appeals.

First, the Supreme Court noted that it "has eliminated the requirement of mutuality in applying collateral estoppel to bar relitigation of issues decided earlier in federal court suits. *Blonder-Tongue Laboratories, Inc. v. University of Illinois*, 402 U.S. 313 [91 S.Ct. 1434, 28 L.Ed.2d 788] ...." 449 U.S. at 94, 101 S.Ct. at 415. Thus, the fact that the defendants in the instant suit were not parties to Holsey's prior litigation is not fatal.

The federal courts generally have also consistently accorded preclusive effect to issues decided by state courts. *E. g., Montana v. United States, supra; Angel v. Bullington*, 330 U.S. 183 [67 S.Ct. 657, 91 L.Ed. 832]. Thus, res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has

---

**38.** *Phillips v. Purdy*, 617 F.2d 139 (5 Cir. 1980), does not compel a different result. In *Phillips*, the Fifth Circuit reversed a *sua sponte* dismissal based on limitations because the running of the statute of limitations might have been tolled. Although the Fifth Circuit reversed the district court because it had improperly ignored the tolling provisions of the state statute of limitations, it did not question the decision to raise limitations *sua sponte*.

**39.** *Res judicata* and collateral estoppel are "related doctrines." *Allen v. McCurry*, 449 U.S. at 94, 101 S.Ct. at 414.

Under res judicata, a final judgment on the merits of an action precludes parties or their privies from relitigating issues that were or could have been raised in that action. *Cromwell v. County of Sac.*, 94 U.S. 351, 352 [24 L.Ed. 195]. Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case. *Montana v. United States*, 440 U.S. 147, 153 [99 S.Ct. 970, 973, 59 L.Ed.2d 210].

*Id.* Res judicata is "a rule of fundamental and substantial justice, 'of the public policy and of private peace,' which should be cordially regarded and enforced by the court." *Federated Department Stores, Inc. v. Moitie*, —— U.S. ——, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), *quoting Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917). "The language used by this Court half a century ago is even more compelling in view of today's crowded dockets ...." *Id.*

been recognized as a bulwark of the federal system. See *Younger v. Harris*, 401 U.S. 37, 43–45 [91 S.Ct. 746, 750–751, 27 L.Ed.2d 669].

*Id.* The Court, citing the full faith and credit statute, 28 U.S.C. § 1738, noted that "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever courts of the State from which the judgments emerged would do so . . . ." *Id.*

*Citing, inter alia, Wiggins v. Murphy*, 576 F.2d 572, 573 (4 Cir. 1978) (*per curiam*), *cert. denied*, 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 57 (1979), the Supreme Court wrote "that every Court of Appeals that has squarely decided the question has held that collateral estoppel applies when § 1983 plaintiffs attempt to relitigate in federal court issues decided against them in state criminal proceedings." 449 U.S. at 96, 101 S.Ct. at 416.[40] The Supreme Court held that the doctrine of collateral estoppel is applicable to a prisoner's § 1983 claim.

The *McCurry* holding has been the law in this circuit for some time. In *Rimmer v. Fayetteville Police Department*, 567 F.2d 273, 274 (4 Cir. 1977), a state prisoner filed an action under 42 U.S.C. § 1983 seeking both damages and injunctive relief for an alleged denial of his constitutional rights during the course of his trial on criminal charges in a state court. The Fourth Circuit held that it was proper for the district court to dismiss the complaint because the doctrine of collateral estoppel barred the claim.

Over eleven years ago in *Moore v. United States*, 360 F.2d 353 (4th Cir. 1966) [*cert. denied*, 385 U.S. 1001, 87 S.Ct. 704, 17 L.Ed.2d 541 (1967)], we held that a taxpayer convicted of tax fraud could not relitigate the question of his fraud in a subsequent civil suit for the collection of fraud penalties for the same years which were involved in the criminal prosecution. There is nothing new in the concept that full litigation of an issue in a criminal proceeding forecloses subsequent relitigation of the issue in a civil proceeding when resolution of the issue was essential to the conviction.

*Id.* at 276.[41]

In *Wiggins v. Murphy*, 576 F.2d 572, 573 (4 Cir. 1978) (*per curiam*), *cert. denied*, 439 U.S. 1091, 99 S.Ct. 874, 59 L.Ed.2d 57 (1979), the Court cited *Rimmer*. *Wiggins* involved a § 1983 claim. The plaintiff was seeking to expunge the record of six state criminal convictions. He "had tried the same issues in state court and lost . . . ." *Id.* at 573.

This court recently held that the doctrine of *res judicata* does apply to § 1983 actions. *Rimmer v. Fayetteville Police Department*, 567 F.2d 273, 276 (4th Cir. 1977). We perceive no reason why *res judicata* should not bar relitigation in this

---

**40.** *Accord*, Comment, *The Collateral Estoppel Effect to be Given State-Court Judgments in Federal Section 1983 Damage Suits*, 128 Univ. Pa.L.Rev. 1471, 1471–72 n.6 [hereinafter cited as "Collateral *Estoppel Effect*"].

**41.** In *Gatling v. Midgett, et al.*, No. 14,863 (4 Cir. June 9, 1971), a state prisoner filed a § 1983 claim against two deputy sheriffs and a private guard, alleging that an arrest, search, and seizure was illegal because it was accomplished without a warrant and without probable cause. The plaintiff, however, had been found guilty in a state criminal trial. The § 1983 issues were not raised on direct appeal, although they were "assigned as error" in the intermediate appellate court. The Fourth Circuit wrote:

If this were a habeas petition we would deny relief for failure to exhaust state remedies.

In this context we think a broad rule of estoppel is appropriate; that a § 1983 civil action based on a search and seizure held valid in a criminal trial cannot be maintained so long as the criminal judgment of conviction remains undisturbed. Federalism, we think, requires such a result. It is difficult to conceive of a more abrasive example of indifference to state judicial process than to allow a civil action to proceed in a federal court on a fact hypothesis finally adjudicated and rejected in a presumably valid state criminal proceeding.

*Curley v. Bryan*, 362 F.Supp. 48, 52 (D.S.C. 1973), and *Moran v. Mitchell*, 354 F.Supp. 86, 89 (E.D.Va.1973), have cited *Gatling* in published opinions.

case of the same issues which were decided by the state courts.

*Id.*[42]

In *Nash v. Reedel*, 86 F.R.D. 13 (E.D.Pa.), appeal dismissed as frivolous, No. 80–1331 (3 Cir. May 22, 1980), a prisoner filed a § 1983 claim against police officers, alleging, *inter alia*, arrest without probable cause, failure to inform him of his *Miranda* rights, and knowing use of perjured testimony. The defendants raised an estoppel because the issue had been adversely determined to plaintiff on a motion to suppress at his state criminal trial. The court held "that Nash is collaterally estopped in the instant case from pressing his claims that the defendant police officers illegally arrested him and denied him his rights after his arrest." *Id.* at 15; *see Diaz-Buxo v. Trias Monge*, 593 F.2d 153, 157 (1 Cir.) (plaintiff's § 1983 claim in federal court is precluded by decision of Puerto Rico Supreme Court on the merits, because "the only federal review available is in the Supreme Court by petition for certiorari"), *cert. denied*, 444 U.S. 833, 100 S.Ct. 64, 62 L.Ed.2d 42 (1979).

Finally, in *Daves v. Scranton*, the United States District Court for the Eastern District of Pennsylvania stated:

> Under these standards plaintiff's complaint is clearly frivolous. He attempts to utilize the broad and generous language of the civil rights statutes as a basis for re-evaluating defendants' testimony at his [plaintiff's] criminal trial, a trial at which a jury found plaintiff guilty beyond a reasonable doubt. He now purports (1) to prove by a preponderance of the evidence that which he did not persuade[43] his criminal jury created a reasonable doubt as to his guilt . . . .

66 F.R.D. at 7.

■ Application of collateral estoppel to the instant complaint bars the claim. "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. at 94, 101 S.Ct. at 414.

Holsey "has [previously] attacked nearly every aspect of the judicial process which resulted in the adjudication of his guilt . . . ." *Holsey v. Mandel*, Civil No. W–76–1588 (D.Md., filed March 10, 1977). After direct appeals, three state post conviction proceedings, six federal habeas petitions, and numerous civil rights suits, it is inconceivable that there remains an issue which has not yet been fully explored or waived. *See Cramer v. Crutchfield*, 648 F.2d 943 (4 Cir. 1981) (failure to raise fourth amendment claim in state trial acts as a waiver of § 1983 claim based on an alleged fourth amendment violation); *Mastracchio v. Ricci*, 498 F.2d 1257 (1 Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975) (if the allegedly perjured testimony was necessary to a finding of guilt, plaintiff is estopped; however, if it was not necessary to such a finding, plaintiff has suffered no harm). To summarize, if plaintiff's claims were not raised at trial, on appeal, or in collateral attacks, they have been waived. If the claims were raised and decided adversely to plaintiff, he is estopped. If the claims were not necessary to support plaintiff's conviction, he has suffered no harm.

In its *per curiam* opinion, the Maryland Court of Special Appeals wrote:

> 4. Appellant makes bald assertions:
>
> (a) of collusion; (b) that appellant was under duress at trial; . . . (d) of denial of due process.
>
> All of these complaints were offered without supporting facts, and the record supports none of them.

---

42. In light of *McCurry*, it makes little difference that the doctrine of collateral estoppel was used in *Rimmer*, while it was denominated as the broader rule of *res judicata* in *Wiggins*. Cf. *Collateral Estoppel Effect*, 128 U.Pa.L.Rev. at 1477 (collateral estoppel is the correct doctrine).

43. As the *Daves* court pointed out, it is axiomatic that the burden of proof in a criminal trial is on the prosecution. The defendant does not carry the risk of nonpersuasion.

*Holsey v. State of Maryland*, No. 571 at 3. This opinion estops Holsey's claims of duress at his criminal trial.[44]

Holsey is estopped from asserting the ineffectiveness of his counsel by *Holsey v. Keller*, Civil No. W–79–77 and Civil No. W–79–1202 (D.Md., filed May 23, 1980), appeal pending, *citing Holsey v. Warden of the Maryland Penitentiary*, Post Conviction No. 2788 (Crim.Ct.Balt., filed October 1, 1975). In the state proceeding Judge Grady found as a fact that petitioner was afforded adequate representation at his trial. This Court adopted that finding.[45]

As to Holsey's claims against the attorneys who represented him after his conviction, the Fourth Circuit stated:

In No. 76–531, Holsey filed a complaint against the court-appointed attorneys who represented him at various state court proceedings, alleging that these attorneys not only failed to provide him with effective representation, but that they took affirmative action to deprive him of his constitutional rights and that they conspired to procure his conviction and incarceration . . . .

Named as defendants in No. 76–531 were the two court-appointed attorneys who represented Holsey at his motion for new trial and sentencing, and his appeal respectively.

The district court correctly dismissed Holsey's complaint against his court-appointed attorneys. This Court has recently held that court-appointed attorneys acting within the scope of their official duties are absolutely immune from a civil suit for damages brought pursuant to 42 U.S.C. § 1983. *Minns v. Paul*, 542 F.2d 899 (4th Cir. 1976) [*cert. denied*, 429 U.S. 1102, 97 S.Ct. 1127, 51 L.Ed.2d 552 (1977)]. Holsey has stated no facts to support his allegations that his court-appointed attorneys intentionally deprived him of his constitutional rights so as to require removal of their shield of immunity.

*Holsey v. Greif, et al.*, No. 76–1642 (4 Cir. May 19, 1977). Thus, Holsey's claims as to Greif and Smith are estopped.[46]

Holsey's allegations concerning impropriety in the state post conviction procedures were necessarily decided against him in *Holsey v. Keller* when this Court denied his petition for a writ of habeas corpus. This Court found that the hearing on Holsey's first state post conviction proceeding was full, fair, and adequate. The Court found that the record as a whole demonstrated procedural fairness. Both the state courts and this Court found that Holsey had waived numerous claims, *e. g.*, false and misleading court records. There is no reason to resurrect those claims in this § 1983 action.

Finally, this Court notes that Holsey has repeatedly sued many of the defendants here. Judges Orth, J. W. Murphy, and Grady, as well as Romano and Yankellow, were defendants in *Holsey v. Foster*, Civil No. W–76–514 and Civil No. W–76–530 (D.Md., filed May 5, 1977) and *In Re Aaron Holsey*, Civil No. 76–532.[47]

---

**44.** Included in this category are claims of substandard jail conditions, use of prescribed medication, weakness due to fasting, lack of fitness to stand trial, and others.

**45.** Holsey's claim that Freedman and Glaser bullied him is also estopped by *Holsey v. Keller*.

**46.** Court-appointed counsel do not act under color of state law. *Hall v. Quillen*, 631 F.2d 1154 (4 Cir. 1980). In *Hall*, the Fourth Circuit indicated that *Minns* may no longer be a viable opinion; however, even if *Minns* is no longer viable, *Hall v. Quillen* defeats Holsey's claims against all of the attorneys because they were court appointed or retained, and, therefore, did not act under color of state law as required in order to state a § 1983 claim.

Even if *Minns* is no longer viable, *Holsey v. Greif*, No. 76–1642 (4 Cir. May 19, 1977), is still entitled to full *res judicata* effect. *See Federated Department Stores, Inc. v. Moitie*, —— U.S. ——, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

**47.** In a pleading titled "Response to Court's Order" Holsey wrote:

*1*—Plaintiff first instituted proceedings against named defendants in civil cases no. *W–76–514*, *W–76–530*, and *W–76–531*. But this court summary [sic] dismissed the case [sic] without first allowing service upon any defendants.

This Court holds that Holsey's instant claim is barred by collateral estoppel.[48]

Because the defenses of statute of limitations and collateral estoppel bar Holsey's claim, the Court holds that the complaint is frivolous under § 1915(d). It is beyond doubt under any arguable construction, both in law and in fact, of the substance of Holsey's claim, that Holsey is not entitled to relief. *See Boyce,* 595 F.2d at 952.

## VII

The complaint will be dismissed by separate order. This Court is aware that summary dismissal is a harsh and unusual remedy which is to be used sparingly. The Court would, however, possibly be justified in taking even stronger action. *Graham v. Riddle,* 554 F.2d 133 (4 Cir. 1977); *Rudnicki v. McCormack,* 210 F.Supp. 905 (D.Mass. 1962), *appeal dismissed,* 372 U.S. 226, 83 S.Ct. 679, 9 L.Ed.2d 714 (1963) (*per curiam* ).

In *Rudnicki,* after reviewing the history of the "ancient bill of peace" the district court enjoined the plaintiff from further vexatious, frivolous suits. At this time, this Court need not take such a step.

---

2—Plaintiff then submitted a suit to the court directed at the named defendant entitled *Holsey v. Foster, etc.* Dated: December 8, 1976. But that case has remained inactive in this Court for approximately four years.

3—Plaintiff then submitted the present case: *Holsey v. Bass. etc.* to the court, which is an amendment of the case entitled: *Holsey v. Foster, etc.* and which in effect amends, clarifys, more fully documents, and more comprehensively details the pleadings listed in No 1 above.

That pleading contains a certificate of service and it is properly before the Court.

Previously, *Holsey v. Foster* (undocketed) was returned to Holsey, although Holsey refiled the complaint, stating that "the above civil rights case conforms to the standards of this court . . . ." Letter from Holsey to the Clerk of the Court, dated March 22, 1978. Recently, in a letter served on the Attorney General, Holsey stated: "I am hereby withdrawing that case [*Holsey v. Foster* (undocketed)] from the courts . . . ." Letter from Holsey to this Court dated March 26, 1980. Thus, *Holsey v. Foster* was unequivocally withdrawn by the plaintiff. In the future, he should cite the case as "*Holsey v. Foster,* undocketed (withdrawn)."

Even if *Foster* had not been withdrawn, Holsey's claims would be barred by the doctrine of collateral estoppel. *Holsey v. Bass* is allegedly a more fully documented version of *Holsey v. Foster.* Because Holsey's claims in *Bass* are estopped, his claims in *Foster* are also estopped.

48. The Court notes that Holsey admits that his present claim is substantially identical to his past claims. On November 8, 1980, Holsey mailed a carbon copy of a letter from Holsey to Chief Judge Northrop to this chambers. Holsey wrote:

> Cases *W–79–77* and *W–79–1202,* presently on Appeals to the 4th Circuit, and Appeals of Judge Watkin's denial of my Habeas Corpus Petition.
>
> Part of my contentions with-in that Petition Relates to the Misconduct of Various Partys During All Stages of my Trial, Conviction, and Post Trial Stages.
>
> In Ruling upon my Petition, Judge Watkins Alleged That All of my claims were False. And without merit.
>
> Now Pending Before Judge Watkins is a civil Rights complaint entitled: *Holsey v. Bass etc.* which Relates to the same general Subject matter and Parties As Did the Habeas Petition.

Thus Holsey, in his own words, states that the instant claim is substantially similar to his past claims; however, because it is this Court's policy to discourage *ex parte* communication with the Court, and because the letter is an improper *ex parte* communication, *Green v. Wyrick,* 428 F.Supp. 732, 769 (W.D.Mo.1979); *Recommended Procedure for Handling Civil Rights Cases in Federal Courts* (Federal Judicial Center 1980), 65, this Court will not rest its decision on the letter in ruling on the instant complaint.